Lessee of THOMAS SHIELDS *against* DAVID BUCHANNAN and MOSES LATTA.

A survey, adopted by the land office, though not made by the regular officer, may be read in evidence.

A deed acknowledged in 1783, before a member of the Supreme Executive Council, cannot be read in evidence, without further proof.

A vendor of lands with implied warranty, cannot be a witness without a release; but if he is merely a trustee and has released his trust, he may be examined.

EJECTMENT for one messuage, and 200 acres of land, situate in South Huntindon township.

The plaintiff in support of his title, showed in evidence an application to the land office dated 3d April 1769, No. 2126, for 300 acres of land, specially located, in the name of Thomas Holiday ; also another application dated 13th June 1769, No. 3371, for 300 acres, also specially located, in the name of James Holiday.

He then offered to show in evidence two surveys made by James Kinkead, in pursuance of the orders, containing 624 acres and 45 perches ; accompanied by the receiver general's receipt on the 29th January 1785, in full of the purchase money and interest for 624 acres of land heretofore surveyed on the applications of Thomas and James Holiday, No. 2116 and 3371 ; and likewise a hearing before the board of property, on *caveat* by Moses Latta, one of the defendants, against Christopher Hayes, under whom the plaintiff claims, whereby the above two surveys are recognized, and the granting of a patent as to the interference of Latta, is deferred. This hearing was on the 5th April 1792. It was also stated, that the plaintiff and defendants claimed under the surveys made by Kinkead.

The defendants objected to the survey being read in evidence. It did not appear when they were made, or returned into the surveyor general's office. However their returns may have been effected, the surveys are inofficial, not having been made by a person vested with proper authority for that purpose. Kinkead never acted under William Thompson, the surveyor of the district, (which was established by the oath of a witness, and not denied by the plaintiff,s counsel,) and therefore surveys made by him, were wholly irregular and void. Whether the defendant's claim under the same surveys, cannot possibly appear in this stage of the cause. Possibly they may rely on their possession alone ; but the plaintiff must show a title in himself.

By the court. Enough has been shown, to justify the reading of the surveys to the jury. They have been accepted into the surveyor general,s office, acknowledged by the receiver general, and recognized by the board of property. No oipinion is now given as to their validity;

that matter is reserved for future consideration, when the evidence is fiinished and as opposite title comes in competition. It is certain the surveys have been made out of the common line ; but we well know the proprietary land officers sometimes deviated from their usual forms of doing business.

A deed from Thomas Holiday to Thomas White, dated 8th June 1770, and acknowledged before Christopher Hayes, on the 20th January 1783, was then offered in evidence, and accepted to by the defendant, the said Hayes at the time of the acknowledgment, being only a member of the Executive Council ; which was ascertained by proof.

And by the court. The objection appears to us to be fatal. Under the law of 28th May 1717, 1 Dall. Laws, 110, § 2, justices of peace were empowered to take the acknowledgment of deeds. But this was changed by the act of 18th March 1775, ib. 703, § 1, which directed that all deeds made, should be acknowledged before a judge of the Supreme Court, or a justice of the Court of Common Pleas of the proper county. It is true, that every member of the Executive Council, was declared by the constitution of 28th September 1776, Ib. Append. 58, to be a justice of the peace for the whole commonwealth, by virtue of his office ; but the natural construction thereof was, that they should be mere conservators of the peace, and not possess all the powers of justices of the peace, in removing paupers, &c. But in the events of a great revolution, it was prudential to sanctify certain irregular acts, *flagrante bello* ; and hence a law was passed on the 31st August 1778, which directs, that acknowledgments and proofs of deeds before any member of the council of safety, while that council subsisted, of convention justices of the peace, until justices of the Court of Common Pleas were appointed, or members of the Executive Council at any time before the publication of that act should be valid provided the deeds were recorded within nine months. This deed not being acknowledged until 1783, and never recorded, the irregularity is not cured by the act, and therefore without other proof, it cannot be received in evidence.

It was then shown in evidence by the plaintiff, that William Holiday, one of the subscribing witnesses to the aforesaid deed, died in New York during the late war, and that the signature thereto, was believed to be his ; hand-writing that John Lowman, the other witness, was on the north west of the Ohio, near Presque Isle, and that the signature thereof was believed to be written by the grantor ; and the court thereupon directed it to be read.

The said Thomas White, the grantee, on the 16th May 1772, conveyed the lands in question to Elizabeth, his eldest daughter by his first marriage, containing 143¼ acres. She afterwards intermarried with Moses Latta, one of the defendant, who, on the 13th September 1787, obtained a warrent for 142 acres, including an improvement, and completed his legal title by a patent dated 30th November 1787.

The said Thomas White, on the 24th October 1780, also conveyed the whole 624 acres to Agnes, his youngest daughter by his second marriage. In April 1784, she conveyed the whole tract to Christopher Hayes and John Henderson, in consideration of 200*l*. On the 26th May 1791, Christopher Hayes declares, that the lands were purchased with the proper moneys of Thomas Shields, the lessor of the plaintiff, and the use thereof resulting to him, he "grants, bargains, sells and releases" all his legal interest therein to him, in consideration of 5*s*. The legal interests of Henderson in the other moiety was vested in Shields, by a deed from James Guthrie, sheriff, dated 3d August 1791.

The deposition of Agnes Ryan, (late White,) was offered in evidence by the plaintiff, and excepted to, because her conveyance containing words of implied warranty, she could be no witness without a previous release. And the same was accordingly overruled by the court.

The court inclined likewise to the same opinion, on an objection taken to the deposition of Christoper Hayes on the same ground. But the counsel urged that this was materially distinguished from the former case. Hayes declared in his deed that he was a mere trustee for the use of Shields, and had paid his money for the lands : and the latter by accepting of this conveyance estops himself from asserting that Hayes sold to him. Consequently he can set up no claim against Hayes, on the words of implied warranty contained therein, but is obliged to take the title as he finds it. He shall never be allowed to recur to his mere trustee for any supposed damages incurred in the purchase of a bad title, after having once adopted his act. The court hereupon readily retracted the opinion they at first entertained, and directed the deposition to be read.

Verdict *pro def.*

Messrs. Ross and Young, *pro quer.*
Mr. Woods, *pro def.*