## Lancaster Bank *versus* Myley.

Real estate may be held *in partnership*, provided such intention be manifested by writing put on record. This intention is sufficiently manifested in the case of a sheriff's deed to the firm, by the record of it in the prothonotary's office.

The office of the habendum in a deed is not to designate the grantee, but to determine the amount or quantity of the estate or interest granted by the deed; and therefore, where a deed is to persons as partners, habendum to them, their heirs and assigns forever, these words in the habendum merely determine the quantity of interest conveyed to the firm, whether an estate in fee, or during the continuance of the partnership, or for life.

When real estate, purchased by the partners, paid for with partnership funds, and conveyed to them as partners, and the deed duly put on record, is sold under a mortgage executed by them, as partners, under the firm name, which has been duly recorded, the proceeds of such sale are payable under the mortgage, to the exclusion of a *previous* judgment obtained against one of the partners.

Appeal from the decree of the Common Pleas of *Lancaster county*, distributing money arising from the sale of the real estate of Holmes, Myers & Co.

Augustus Holmes, James Myers and John Strimpler, trading as partners, under the name and firm of Holmes, Myers & Co. on the 12th day of October, 1842, purchased at public sale from A. E. Roberts, Esq., late sheriff of Lancaster county, a certain piece of ground in the Borough of Columbia, Lancaster county, containing about 4 acres, with a new furnace, stack, &c. thereon erected, and for which they paid the sum of $425. For this piece

of ground, John Ehler, Esq., the successor of A. E. Robers, Esq. on the 12th day of December, 1842, executed a deed to the purchasers, wherein among other things it is thus set forth : "And whereas the said A. E. Roberts, the sheriff aforesaid, having given due, public and legal notice of the time and place of sale of the said piece of ground, containing about 4 acres, with the improvements, did on Wednesday the 12th day of October, expose the same to sale by public vendue or outcry, and sold the same to Augustus Holmes, James Myers and John Strimpler, trading under the firm of Holmes, Myers & Co." &c. and that "in consideration of the purchase money being paid by the said Holmes, Myers & Co. he doth grant and sell unto the said Augustus Holmes, James Myers and John Strimpler & Co. their heirs and assigns, the said piece of ground" &c. There is annexed to this deed, a receipt given to the said Holmes, Myers & Co. for the consideration money. The deed was duly acknowledged in the District Court for the city and county of Lancaster, on the 12th day of December, 1842, and entered upon the records of said court, in Record Book of Sheriff's Deeds, No. 1. p. 304.

On the 1st day of April, 1846, by an indenture executed between Thaddeus Stevens, Esq., and John Strimpler, Augustus Holmes and James Myers, trading under the firm of Holmes, Myers & Co., the said Thaddeus Stevens, for and in consideration of the sum of four hundred and fifty-five dollars hereinafter charged upon the premises ; and of the sum of eighteen hundred and fifty dollars to him in hand paid by the said Holmes, Myers & Co. at and before, &c. conveyed, for the consideration therein mentioned, the property therein described, (being the same property conveyed by the sheriff,) and also included in the mortgage hereafter mentioned, to the said John Strimpler, Augustus Holmes and James Myers, and to their heirs and assigns.

These said premises were used by the partners aforesaid for the purpose of carrying on and conducting the partnership business of the said firm, as furnace men, until they were sold by the sheriff of Lancaster county, by virtue of an *alias levari facias* issued out of the Court of Common Pleas, No. 21, August term, 1849, on a judgment obtained on a *scire facias sur mortgage*, as hereinafter shewn.

On the 28th day of July, 1847, Henry Myley obtained a judgment against John Strimpler, one of the said partners, in the District Court for the city and county of Lancaster, No. 98, June term, 1847, for the sum of $2282 09.

On the 17th day of July, 1848, Augustus Holmes, James Myers and John Strimpler, as partners under the firm of Holmes, Myers & Co., mortgaged the same premises mentioned in both deeds, to "The Lancaster Bank," Ann C. Bayard, and others, for the payment of divers sums of money mentioned in said

mortgage. This mortgage was duly recorded on the 17th of July, 1848, in Mortgage Book, No. 11, at page 166. A *scire facias* was issued upon this mortgage on the 23d day of March, 1849, out of the Court of Common Pleas, No. 102, April term, 1849, and a judgment obtained thereon. An *alias levari facias* was afterwards issued, and the premises sold by the sheriff of Lancaster county, as the property of Augustus Holmes, James Myers and John Strimpler, partners, trading under the firm of Holmes, Myers & Co.

The proceeds of the sale of said real estate were paid into court for distribution, and auditors were appointed to make such distribution. After due notice of the time and place of meeting, the parties interested appeared before them, when the executors of Henry Myley, deceased, claimed the one-third of the amount for distribution under his judgment against John Strimpler, No. 98, June term, 1847: Debt $2282 09. But the auditors made distribution among the partnership creditors, under the mortgage to the Lancaster Bank and others.

Their report was filed in the Court of Common Pleas, and was afterwards excepted to by the counsel for the executors of H. Myley, deceased, upon the ground that the auditors erred in awarding the funds to the partnership creditors; and in not awarding one-third of the nett balance for distribution to the said executors of Henry Myley, deceased, under the judgment against John Strimpler. These exceptions were argued in the Court of Common Pleas, and on the 18th of March, 1850, the court, after reviewing the facts—the evidence and the report of the auditors— and after referring to the decisions which it was thought governed the case then before them, were of opinion, that the said Augustus Holmes, James Myers and John Strimpler held the said premises as tenants in common, and not as partners at the time of the sale by the sheriff.

It was therefore ordered by the court, "that the one-third of the money for distribution, to wit: the sum of $1017 22 be applied in satisfaction *pro tanto* of the judgment of Henry Myley *vs.* John Strimpler, No. 98, June term, 1847; and that the residue of the money for distribution, to wit: $2034 44 be distributed *pro rata* among the several creditors named in the mortgage of the 17th July, 1848, to "The Lancaster Bank" *et al* above stated."

From this decree of the said Court of Common Pleas of Lancaster county, an appeal was taken.

The deed from John Ehler, sheriff, *inter alia,* and after various recitals, contains as follows:

Now know ye, that the said John Ehler, Esq., High Sheriff as aforesaid, in pursuance of the said order and direction of the court aforesaid, and also for and in consideration of the aforesaid

[Lancaster Bank *v.* Myley.]

sum of four hundred and twenty-five dollars, lawful money as aforesaid, to the said A. E. Roberts, late sheriff, in hand paid by the said Holmes, Myers & Co. (the receipt and payment whereof is hereby confessed and acknowledged by the said A. E. Roberts,) hath granted, bargained, and sold, and by these presents, according to the directions of the said last writ, and by force and virtue thereof, doth grant, bargain and sell, unto the said Augustus Holmes, James Myers and John Strimpler, &c., their heirs and assigns, all the said above mentioned and described piece of ground with the improvements aforesaid, together &c.   To have and to hold the said real estate, hereditaments and premises hereby granted, or mentioned, or intended so to be, with the appurtenances, unto the said Augustus Holmes, James Myers and John Strimpler, &c. their heirs and assigns, to their and for their only proper use and behoof, forever; for such estate and under such rents and conditions as the said James Colvin and Robert K. Colvin, had and held the same at and immediately before the taking thereof in execution, &c.

In witness whereof:

Signed,     John Ehler, Sheriff, [L. S.]

Received on the twelfth day of December, Anno Domini, one thousand eight hundred and forty-two, of and from the above named Augustus Holmes, James Myers and John Strimpler, trading under the firm of Holmes & Co., the sum of four hundred and twenty-five dollars, lawful money of Pennsylvania, in full for the consideration money above mentioned.

A. E. Roberts.

Exceptions and errors assigned:

1. The court erred in that part of the opinion delivered, in which they say, "The decision in Hale *vs.* Henry, 2 *Watts* 145, covers the case before us."

2. The court erred in that part of their opinion, in which they say: "In the case now before us, the intention to bring the real estate into partnership is not manifested by deed or writing placed on record.   The grantees, therefore, held it as tenants in common, at the time of the sale."

3. The court erred in that part of the opinion in which they say, "the interest of John Strimpler was bound by the judgment recovered against him, before the mortgage was given."

4. The court erred in making their order or decree.

The case was argued by *Ford*, for appellants.

1. The court erred in that part of the opinion delivered in which they say that "the decision in Hale *vs.* Henry, 2 *Watts* 145, covers the case before us."

This is not the fact. The case of Hale *vs.* Henry differs from this. There, the real estate was purchased by Capp and Henry together, and the deed taken in their names, as tenants in common, and while there was nothing contained in the deed shewing that they held the same, as partners, there was besides no agreement or other writing placed on record, that creditors might not be deceived. It was, therefore, held by the court, that "it is not competent to show by parol that a deed to two persons as tenants in common, was purchased and paid for by them as partners, and was partnership property; and that when partners intend to bring real estate into a partnership stock, that intention must be manifested by deed or writing placed on record."

That case was therefore entirely different from the present. *There*, the deed was to Capp and Henry, as tenants in common. *Here,* it was to Augustus Holmes, James Myers and John Strimpler, trading under the firm of Holmes, Myers & Co. *There,* there was no record of anything. *Here,* there was a sheriff's deed duly executed, acknowledged in open court, and placed on record in the prothonotary's office, in conformity with the laws of this commonwealth. This registering of a sheriff's deed in the prothonotary's office, is equivalent to recording it in the recorder's office; and this was so decided in 4 *Whar.* 293, Nagle *vs.* Albright and others. Here was cited 1 *Amer. Lead. Cases,* 340; 1 *State Rep. in Equity in S. C.* 1824, Winslow *vs.* Chifelle; 1 *Hammond's Ohio Rep.* 244; 3 *Kent* 39, *note A.; Story on Part.* sec. 82 id. 92; *Coll. on Part. B.* 5, ch. 3, p. 783; 5 *Metcalf Rep.* 582.

*Hiester,* for appellees.

The appellants insist that the deeds in this case are to Augustus Holmes, James Myers and John Strimpler, trading under the firm of Holmes, Myers & Co. This is not the fact. Here the sheriff, by his deed, grants, bargains and sells the property "to Augustus Holmes, James Myers and John Strimpler, &c., their heirs and assigns," to have and to hold the same "unto the said Augustus Holmes, James Myers and John Strimpler, &c., their heirs and assigns." There is no mention of the partnership in the operative clauses of the deed—no conveyance to the uses of the partnership—but simply to the partners in their individual capacity.

But the sheriff's deed was not that upon which the defendants relied for their title; they held the property under a deed of conveyance from Thaddeus Stevens, Esq. This deed was *not recorded,* and granted, bargained and sold the property to "John Strimpler, Augustus Holmes and James Myers, their heirs and assigns," *habendum* and *tenendum,* to "John Strimpler, Augustus Holmes and James Myers, their heirs and assigns," covenant with "John Strimpler, Augustus Holmes and James Myers, their heirs, executors and assigns." This deed does not even recite the parties

of the second part in the order in which their names occurred in the firm.

The payment of the purchase money with partnership funds does not affect the nature of the interests conveyed by the deed: Goodwin *vs.* Richardson, 11 *Mass.* 475; 7 *S. & R.* 443, McDermot *vs.* Lawrence; 3 *Br. Ch. C.* 99; Bell *vs.* Phyn, 7 *Ves. jr.* 453; 9 do. 509, 15 *Johns.* 161, Coles *vs.* Coles; *Story on Part.* 83. It is therefore submitted that this case does not differ in any material respect from Hale *vs.* Henry, and is ruled by it, as decided by the court below.

2. The appellants contend that the intention to bring this real estate into partnership is manifested by deed or writing placed on record. Where and how? Only by the recital of the payment of the purchase money, which cannot affect the interests vested under the deed; in fact, the operative portions of the deed negative any inference of such intention that might be drawn from this recital. In McDermot *vs.* Lawrence, in which Chief Justice TILGHMAN declared that "certainly where it is the intention of partners to bring real property into the common stock, it would be prudent to put their agreement on record, in order that purchasers may not be deceived:" Hale *vs.* Henry, in which the court "think that where partners intend to bring real estate into partnership, that intention must be manifested by deed or writing placed on record, that purchasers and creditors may not be deceived."

These cases, which settle the law in Pennsylvania, clearly require a recorded deed or agreement in writing, appropriating the real estate to the uses of the partnership, and cannot be satisfied with the naked recital of the source of the consideration of a deed, which passes individual titles on its face.

The opinion of the court was delivered by

COULTER, J.—It is very true that a title of land cannot be affected or overborne by *parol* evidence, that a deed to two or more persons, *as tenants in common*, was purchased and paid for by them as partners, and was partnership property. Because that would be to destroy and contradict the title by deed and set up a parol title in its place. It is also true that when parties intend to bring real estate into a partnership stock, that such intention must be manifested by writing placed on record. Because under the statute of frauds all contracts respecting real estate must be in writing, saving only those exceptions which have been made by the courts, of which this is not one. But the cause on hand is not governed by these principles, or by the case of Hale *vs.* Henrie, 2 *Watts* 145, on the authority of which the court below ruled it.

The deed, in the case, is made to Augustus Holmes, James Myers and John Strimpler, trading under the firm of Holmes,

[Lancaster Bank *v.* Myley.]

Myers & Co. and recites that the purchase money was paid by them, as partners, and the receipt appended to the deed is in the same character. The sheriff in his deed recites that he sold the estate by public vendue or outcry, to Holmes, Myers and Strimpler, trading under the firm of Holmes, Myers & Co. This deed is duly acknowledged in open court and placed in the records of the Common Pleas, as a deed to Holmes, Myers & Co. This furnace and land was the place where the firm carried on the iron business. This deed, then, is not a deed to the members of the firm, as tenants in common, no such word is to be found in the deed; nor can any glimmering of such intent be collected from its whole contents; but on the contrary, it is not only distinctly so expressed, but is apparent from the whole scope of the deed, that that it was made to Holmes, Myers and Strimpler, as a partnership, for manufacturing iron. In the early case of McDermot *vs.* Lawrence, 7 *S.* & *R.* 443, it was said by Chief Justice TILGHMAN, that when it was the intent of the firm to bring real estate into the common stock, it would be prudent to put their agreements on record, that purchasers may not be deceived. And in Hale *vs.* Henry, before cited, the language of the court is " that when parties intend to bring real estate into partnership, that intention must be manifested by deed or writing, placed on record, that purchasers may not be deceived. But how could parties more effectually manifest their intention, that the property was to be held in partnership, than by taking a deed for it, to them *as partners*, as in the present case. The object to be answered is to put creditors and purchasers on their guard, and that purpose is effectually answered by the deed being made to the partners, as partners and not as tenants in common. As parties take so they hold. When the parties take a deed, *as tenants in common*, then, and in such case, it would be necessary to put on record an agreement that it was intended to be brought into partnership stock, or when one of the partners held individually, the same agreement would be necessary. But where the inception and completion of the deed and title is, as partners, so do they hold and not otherwise. Then the next question is did they put the evidence on record? The object is to give creditors and purchasers notice. How is this to be done, except as it is done in similar cases. You may affect creditors with notice of the purchase and sale of real estate, by putting the deed on record, in the recorder's office, or by that process, which this court has decided to be equivalent in cases of sheriff's sale, which was adopted in this case, to wit: the record of the deed to the firm, by the Prothonotary of the Court of Common Pleas. This record distinctly shows that the deed was made to the partnership or firm. And this having been adjudged to be good notice to creditors and purchasers in all other cases, must be considered a sufficient record and notice in this case. Besides,

the partnership existed, lived, moved and had its being, on this property, and that was adequate notice, if the rule adopted in kindred cases is to govern here, that is notice of the deed to the firm, when one existed, or its equivalent, an agreement to make the land partnership stock. In Kramer *vs.* Arthurs, 7 *Barr* 171, it is said by the court, that when land is brought into a concern as stock, it is between the partners and a person who has knowingly dealt with one of them for it, to be treated as personal estate, belonging not to the parties individually, but to the company collectively; and the Chief Justice adds that it would be absurd to let the nature of the article dealt in change the nature of the contract. But it is alleged that the *habendum* is "to them their heirs and assigns forever," and that this makes it a tenancy in common. But this is a misapprehension. The premises are used to set forth the names of *the parties.* Then follows the certainty of *the grantee,* and the thing granted: 2 *Blackstone* 298. So in this case, the certainty of the grantee, to wit: the firm or partnership is orderly set out. But the office of the *habendum* is not to designate the grantee, but to determine the amount of the estate or interest granted by the deed, whether for life in tail or in fee simple: same book and page. The *habendum* here was to determine what quantity of interest was conveyed to the firm. Whether an estate in fee or during the continuance of the partnership, or for life, as a fee, was intended to be passed to the firm, apt words were used for that purpose. The *habendum* cannot introduce a party not named in the premises; nor can it strike out a party that is named.

On the whole, the money of the firm paid for this land, as appears by the deed itself; it was used for the purposes and existence of the firm, and it ought to go to pay the debts of the firm, rather than the debts of Strimpler, one of the partners. Although, therefore, the judgment against Strimpler was before the mortgage by the firm, yet he who dealt with Strimpler was affected with notice that the furnace was the partnership stock of the firm, and the furnace being sold on the judgment against the firm, the money ought to be distributed to the creditors of the firm. The judgment or decree of the court below is reversed, and the report of the auditors is confirmed; and the money ordered to be distributed, accordingly; and the record is remitted to the court below for that purpose.