## Keating *et al. versus* Orne *et al.*

1. Barney, being about to buy land from Vensel, and hearing that Keating had a claim to part of it, asked Keating, without saying he wished to buy, if he claimed any of the land. Keating said "he thought he claimed part, but it did not amount to much, and he did not calculate to give Vensel much trouble about it." From this Barney thought the title was good, and afterwards bought it. *Held*, that in this there was neither such fraud, encouragement nor silence as would estop Keating from recovering the land from Barney's vendee.

2. Keating stating that he had a claim should have put Barney on inquiry; omitting to do so, he took the risk of the claim.

3. Whether an estoppel results from established facts is a question for the determination of the court.

4. An estoppel operates to hold one to facts as he alleges them, although false; and not for the purpose of proving the facts different from the statement.

5. A naked declaration of an intention, made to one giving no reason for the inquiry, will not prevent the assertion of a right contrary to such intention.

6. The affirmance of a point which leaves to the jury to determine both law and facts is error.

November 9th 1874. Before Agnew, C. J., Sharswood, Williams, Mercur and Gordon, JJ.

Error to the Court of Common Pleas of *Clarion county:* Of October and November Term 1874, No. 74.

This was an action of ejectment, brought July 24th 1871, by

[Keating *v.* Orne.]

John F. Orne and Morris R. Stroud against John Keating and others, for a lot of land in Richland township, containing 9 acres 48 perches.

The case was tried, September 1st 1873, before Jenks, P. J.

The plaintiffs gave in evidence a patent for the lot dated June 12th 1866, to John H. Vensel and David Vensel; they sold to Barney Vensel, and from him through intermediate sales their title vested in the plaintiffs.

The defendants gave in evidence title from the Commonwealth to Jared Ingersoll and others by warrant, December 31st 1874, and survey thereon April 3d 1800, for a body of land (No. 5793), including the premises in controversy, and chain of title from them to the defendants.

In rebuttal the plaintiff gave in evidence articles of agreement, dated February 6th 1865, between Barney Vensel and R. B. Brown, by which Vensel agreed to convey the land to Brown on the payment of $100 at the date of the articles, and $1400 on or before the 10th of March 1865, when a deed would be made; it being agreed that if the $1400 should not be paid at the time specified, the contract should be determined and the $100 forfeited.

Barney Vensel testified: "I had a talk with Mr. Keating about the title before I bought the title; David wanted me to buy, and the report was Keating claimed part of the upper end of it, and I would not buy until I saw Keating. I saw him, and asked him if he claimed any of the land. He said he thought he claimed part of the upper end; said it did not amount to much, and he did not calculate to make David trouble about it; some time after I bought the land from David; from what Keating told me, I thought the title was all right, and David was poor, I bought it, and was to pay one hundred and fifty dollars, and did pay fifty dollars at the time; subsequently paid the whole amount; bought the whole thing from David; I am a brother of David Vensel; David moved on the land in 1862 or 1863; he built a house on it, and had a garden and potato patch; the cleared ground was enclosed."

On cross-examination he said: "I do not know whether Keating knew where the lines were, nor the amount he claimed, at the time he talked with me; it was some time after the conversation that I bought; * * * house, I think, was on it before I talked with Keating; I have sold the land. * * * After I bought the place, J. T. Hindman and John Keating came to see me, and we went down to the land; I understood Brown sent Hindman down to get Keating to show the part of the land he claimed; we went to see whether Keating could show whether he claimed any of it or not; when we went there, the lines of David and John Vensel tract were marked on the ground; he claimed a part of the upper end; he said there ought to be a line; we all hunted, but could not find one; he claimed that the line was four or five rods further down

[Keating v. Orne.]

the river than the east line. * * * I had no notice that Keating claimed the land: no more than what he told me, the line ought to be further down, and we could not find one; that is all I went down for—to see the land."

Under objection and exception R. R. Brown testified that after he bought the land he sent J. T. Hindman to see Keating about the land; Hindman reported that he, Keating and Vensel went on to the ground, that Keating said the line was a little lower down the river; he looked a little lower down but did not find any line; on these representations the witness took the deed which he had refused to take before and paid the $1400 balance of the purchase-money. In a conversation subsequently with Keating he said Vensel had taken up some land between him and Fox; the substance was that it was not quite so large as they claimed; afterwards Keating asked who owned the house Vensel had on the lot; witness said the plaintiff and he was their agent; Keating proposed to buy the house; witness refused to sell it.

Each party submitted a number of points.

The 8th and 9th points of the plaintiff and their answers were as follows:—

8. Even if the land in dispute is included in No. 5793, if the jury believe that Barney Vensel, before he bought of his brothers, went to defendant and asked him if he claimed the land, and defendant replied, he claimed a small part of it, but it did not amount to much, and he would not give David Vensel any trouble about it, and Barney Vensel, in pursuance of such answer, purchased the land, the defendant is estopped, and cannot now claim it against his privies, the plaintiffs.

Answer: " To the eighth point of the plaintiff, we answer, if the facts stated in this point be true, and Barney Vensel was induced, by the declarations and statements of Keating, to purchase and pay his money, he would be estopped from asserting title against said Vensel and his vendees. Thus qualified, we answer this point in the affirmative."

9. If defendant, by his acts or declarations, encouraged the plaintiffs, or their privies, to invest their money in purchase of the land in dispute, or in its improvement, and where it was his duty to assert his title, if he had any, he declined so to do, he is estopped, and cannot assert title against the plaintiffs.

Answer: " If the facts stated in this point are found by the jury, the conclusions therein stated would follow; we, therefore, answer this point in the affirmative."

The verdict was for the plaintiffs.

The defendants took a writ of error and assigned for error the answers to plaintiffs' 8th and 9th points.

*W. L. Corbitt* (with whom was *D. Lawson*), for plaintiffs in

error.—To constitute estoppel by matter *in pais* there must be a wilful intent to induce the party to act on the faith of the alleged statements and representations : Plumer *v.* Lord, 9 Allen 457 ; Pickard *v.* Sears, 6 Ad. & El. 469 ; Howard *v.* Hudson, 2 El. & Bl. 1; Audenried *v.* Bellelley, 5 Allen 382; Langdon *v.* Doud, 10 Id. 435; Turner *v.* Coffin, 12 Id. 401.

*J. B. Knox* (with whom was *J. Campbell*), for defendants in error.—Where one by his words or conduct wilfully causes another to believe in the existence of a certain state of things so as to alter the other's previous condition, he is concluded from averring against the latter a different state of things existing at the same time : Commonwealth *v.* Moltz, 10 Barr 530 ; Hill *v.* Epley, 7 Casey 334; Miranville *v.* Silverthorn, 12 Wright 149 ; McKelvey *v.* Truby, 4 W. & S. 323 ; Millingar *v.* Sorg, 5 P. F. Smith 215; Meason *v.* Kaine, 17 Id. 132 ; Maple *v.* Kussart, 3 Id. 348.

Mr. Justice MERCUR delivered the opinion of the court, January 4th 1875.

Both the assignments of error raise the question of the sufficiency of the evidence to constitute an estoppel.

The first assignment rests on the testimony of Barney Vensel, from whom the defendants in error acquired title.   David Vensel claimed the land in controversy, and desired to sell it to Barney. ˳The latter testified " the report was, Keating claimed the upper part of it, and I would not buy until I saw Keating.   I saw him, and asked him if he claimed any of the land.   He said he thought he claimed part of the upper end ; said it did not amount to much, and he did not calculate to make David trouble about it."   Barney also testified, that from what Keating told him, he thought the title was all right, and some six months or a year thereafter, he purchased the land of David, paying him part of the purchase-money down, and had since paid the residue.   He further testified, " I do not know whether Keating knew where the lines were, nor amount he claimed, at the time he talked with me."

It does not appear that Barney informed Keating that he had any intention of buying the land, nor that he had any object in making the inquiry.

It will be observed, the declarations of Keating consist of two parts, the one a statement of existing facts, the other, an intention in regard to his future action.   The only existing facts, in regard to title, which he asserted, were, he thought he did claim part of the land, but it did not amount to much—whether much in quantity or much in value, he did not ·specifically state.

The land in dispute is a narrow strip lapping over on the west end of a larger tract owned by Keating.   In the absence of any evidence that he knew where the lines on the ground were, and

[Keating v. Orne.]

being ignorant of the object of the inquiry, we do not think that Barney should have been misled by this statement. It certainly was no denial of ownership, but an assertion of claim. It is true of an uncertain and vague claim, but this very answer may have been caused by his ignorance of the lines, and by an impression that Barney was intermeddling with that which was none of his business. Barney assumed from this conversation that Keating had no claim to the land, although the latter expressly stated he thought he had to a part of it. It is in conflict with every element of an estoppel to hold him to an inference directly contrary to the fact which he stated. An estoppel is invoked to hold one to the facts as he alleged them to be, although false in fact, and not for the purpose of proving the facts different from the statement. This averment of claim was sufficient to have led Barney to make further inquiry. If he omitted to do so, he took the risk of that claim. Nor did Keating's declaration, that he did not calculate to make David trouble, better Barney's condition. The naked declaration of an intention existing in the mind, made to one who gave no reason for his inquiry, will not prevent the assertion of a legal right, contrary to such expressed intention. A vested title in land cannot be so easily swept away. This testimony lacks the ingredients necessary to constitute an estoppel. It cannot be inferred that Keating intended to induce Barney to buy of David, for he had no knowledge that he contemplated any such action. It cannot be said that the declarations were positive acts of encouragement to purchase, when no thought of purchase was intimated by either party to the conversation. Hence there was neither the fraud, nor encouragement, nor silence necessary to constitute an estoppel. Whether an estoppel results from established facts, is a question for the determination of the court: Lewis v. Carstairs, 5 W. & S. 205. This assignment is sustained.

The second assignment is the affirmance of the ninth point submitted by the defendant in error. This point is very general in its terms. It fails to indicate what acts or declarations would constitute encouragement to purchase, or what are necessary to create a duty to assert a title. The affirmance of the point virtually left to the jury to determine the law, as well as the facts. They should have been instructed as to what facts or circumstances were sufficient to create that duty. We therefore think the learned judge erred in his answer.

Judgment reversed, and a *venire facias de novo* awarded.