# Laidley *v.* Rowe, Appellant.

*Ejectment—Issue—Possession—Act of June 10, 1893, P. L. 415
—Appeals—Failure to print testimony.*

1. In a proceeding under the Act of June 10, 1893, P. L. 415, for an issue to determine the title or right of possession of real estate, in the absence of an adverse occupancy, a prima facie legal title in petitioner draws to it such possession as will warrant the awarding of an issue.

2. Where, in such case the lower court awards an issue, upon petition, answer and testimony, and the respondent, on appeal, fails to print the testimony, the appellate court cannot say that the court below erred in finding plaintiff had such possession as entitled him to the issue.

*Deed—Conveyance of coal—Two veins—Patent ambiguity—Latent ambiguity—Mines and mining—Evidence—Historical writings, etc.*

3. Where a deed conveys "the vein or bed of stone coal therein situate," there is no patent ambiguity; but a latent ambiguity arises, if it appears that there were two veins of coal, either of which, standing alone, answers the call in the deed; and such ambiguity may be explained by evidence aliunde the deed.

4. Where such deed is of a date so remote as to be incapable of direct proof by living witnesses, authenticated historical writings, records, reports, surveys, etc., made by disinterested parties, apparently conversant with the facts, but now dead, may be resorted to, but the history of a neighboring county written forty years after the date of the deed is not admissible.

5. Nor is evidence admissible of a witness, born two years after the transaction, that his father bought land in the neighborhood about the date of the deed.

6. Contracts should be interpreted according to the understanding of the parties; evidence is therefore admissible tending to show general knowledge of the subject of the contract in the community at the time in question, inasmuch as the parties are presumed to know facts of public notoriety.

*Deed—Description — Vein of coal — Habendum — Province of court and jury—Evidence—Estoppel.*

7. The habendum in a deed cannot change the subject of the grant, although it may explain and qualify the interest granted or define its extent.

8. Where the subject of grant is a vein of stone coal situate in boundaries designated, and it appears that there are in fact two veins, the subject of the grant is not enlarged by the words of the habendum, viz, "together with the privilege of mining and taking the stone coal within the boundaries designated."

9. Such a deed is properly construed as the conveyance of a vein of coal, and not a mere license to take coal therefrom; and the fact that but a single vein of coal is therein mentioned is a circumstance tending to show the contracting parties knew of no other.

10. The construction of a deed is for the court, but whenever the question of what property it conveys is doubtful and depends on evidence aliunde, the case is for the jury.

11. Whether an estoppel results from established facts is a question of law for the court, but where there is no evidence from which an estoppel may be established, the court must refuse to submit the question to the jury.

*Adverse possession—Possession—Payment of taxes—Evidence.*

12. While an assessment of real estate and payment of taxes thereon, is evidence of a claim of possession, it does not prove title.

Argued October 2, 1922. Appeal, No. 136, Oct. T., 1922, by defendant, from judgment of C. P. Greene Co., March T., 1921, No. 342, on verdict for plaintiff, in case of L. T. Laidley v. Sallie Huston Rowe. Before Moschzisker, C. J., Walling, Kephart, Sadler and Schaffer, JJ. Reversed.

Issue to determine title to coal under Act of June 10, 1893, P. L. 415. Before Ray, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were various rulings and instructions, appearing by the opinion of the Supreme Court.

*William M. Hall,* with him *Crago & Montgomery,* for appellant.—The court had no jurisdiction to frame the issue as there was no possession in appellee and the court so found: Titus v. Bindley, 210 Pa. 121; McCor-

mick v. Berkey, 238 Pa. 264; Mildren v. Nye, 240 Pa. 72; D. & H. Canal Co. v. Hughes, 183 Pa. 66; Ullom v. Hughes, 204 Pa. 305.

Historical facts of general and public notoriety may be proved by reputation, and reputation may be established by historical works of known character and accuracy: Morris v. Harmer, 7 Peters (U. S.) 554.

*William J. Kyle,* with him *J. I. Hook,* for appellee.— The court had jurisdiction: Titus v. Bindley, 210 Pa. 121; Fearl v. Johnstown, 216 Pa. 205; McCormick v. Berkey, 238 Pa. 264; Mildren v. Nye, 240 Pa. 72; Bell's Petition, 259 Pa. 495.

The habendum of a deed does not grant the estate, but only limits its certainty, and cannot enlarge the premises: Karchner v. Hoy, 151 Pa. 388; Shepley v. Lytle, 6 Watts 500; Darrah v. Darrah, 202 Pa. 492.

The construction of a deed as to its legal effect is of course for the court. But this rule does not extend to a case where it becomes necessary to determine by the introduction of extrinsic evidence what particular property is intended to be conveyed: Harvey v. Vandegrift, 89 Pa. 346; King v. Coal Co., 204 Pa. 628; Collins v. Rush, 7 S. & R. 147.

The rejection of the historical papers and books was not error: Spalding v. Hedges, 2 Pa. 240.

OPINION BY MR. JUSTICE WALLING, January 3, 1923:

This controversy is over the title to a vein of coal. William Armstrong, the common source of title, was the owner of a large tract of land lying along the Monongahela River in Cumberland Township, Greene County, and, in 1847, conveyed seventy-six acres thereof to John L. Dawson; the deed therefor contains the following clause: "together with the privilege of mining under the adjoining land of the said party of the first part [now occupied by Alfred Armstrong] and taking therefrom the vein of or bed of stone coal therein situate within

the following described boundaries." This is followed by a description of a thirty-acre piece of land, and the habendum of the deed states, inter alia, "together with the privilege of mining and taking the stone coal within the boundaries described." There was then and still is in the thirty-acre tract a vein of coal five feet in thickness located near the surface and called the Waynesburg or Hill vein, while several hundred feet below this there was and is another vein of coal nine feet in thickness, called the Pittsburgh or River vein; and the main question here is, whether both veins, and, if not, which one passed by the conveyance. Through sundry transfers the title remaining in Armstrong became vested in John C. Dowling, who died in 1910 and whose heirs in 1920 conveyed the Pittsburgh vein of coal in the thirty acres to L. T. Laidley, the plaintiff. Through divers transfers the Dawson title to the coal in the thirty acres became vested in Josiah V. Thompson in 1900, and in 1913 he conveyed the same to the defendant, Sallie Huston Rowe. There has been no coal mined in either vein of the thirty acres since the Armstrong conveyance of 1847.

This appeal is by defendant from judgment entered on a verdict for plaintiff upon an issue awarded under section 2 of the Act of June 10, 1893, P. L. 415, to determine the ownership of the Pittsburgh vein of coal in the thirty acres. The act provides, inter alia, that a party in possession of any lands or tenements, under claim of title, may petition the court of common pleas for a rule upon an adverse claimant to show cause why an issue should not be awarded to determine the title or right of possession; and, if the issue is awarded, that the verdict shall have the same effect as in an action of ejectment. Defendant denied plaintiff's claim of possession and on that ground challenged the right to award an issue. The trial court disposed of this question on petition, answer and testimony; as appellant has failed to print the latter, we cannot say the court erred in finding plaintiff had such possession as entitled him to the

issue. In the absence of an adverse occupancy, a prima facie legal title in petitioner draws to it such possession as will warrant the awarding of an issue: McCormick et al. v. Berkey et al., 238 Pa. 264, 278. This is also the holding of Judge McILVAINE in Britton v. Posey et al., 29 Pa. C. C. R. 668; and see Titus v. Bindley, 210 Pa. 121, and Bell's Petition, 259 Pa. 495.

The real question is, What coal did the parties intend to convey by the Armstrong deed? There is no patent ambiguity in the expression, "the vein or bed of stone coal therein situate," but a latent ambiguity arises from the fact that there are two veins of coal, either of which, standing alone, answers the call in the deed. In such case, evidence aliunde is competent and necessary to explain what was in the minds of the parties; for this purpose plaintiff submitted testimony tending to show that in 1847 the Waynesburg vein was well known with open mines therein near the thirty acres, while the Pittsburgh vein was unknown in that neighborhood and had never been opened there for mining purposes; also that the former vein could be conveniently mined from the adjoining premises, embraced in the deed, while the latter could be mined only by sinking a deep and costly shaft. The defendant offered evidence tending to show the Pittsburgh vein outcropped at various places along the river and was well known in 1847, and prior thereto, and that coal had been mined therefrom, although not in this tract; it also appeared that such coal was of better quality and, the vein being thicker, of much greater commercial value than the upper vein.

To show general knowledge of the Pittsburgh vein, the defendant offered in evidence certain Pennsylvania geological surveys beginning with that for 1839, and an annual report of the corporation known as the Monongahela Navigation Company for the year 1840, also extracts from the book of R. C. Taylor on Coal published in 1848. These apparently reliable reports and publications were made at a time to throw light upon the ques-

tion in controversy and their exclusion was error.
Where the transaction under investigation is so remote
as to be incapable of direct proof by living witnesses,
authenticated historical writings, records, reports, sur-
veys, etc., made by disinterested parties, apparently con-
versant with the facts and now dead, may be resorted to.
Historical books, which have been generally treated as
authentic, are admissible as furnishing evidence of re-
mote transactions: Com. v. Alburger, 1 Wharton 469;
Morris v. The Lessee of Harmer's Heirs, 7 Peters 554;
McKinnon et al. v. Bliss, 21 N. Y. 216; Taylor on Evi-
dence (8th ed.), vol. 2, section 1785; 9 Am. & Eng. Enc.
of Law (2d ed.) p. 886; 17 Cyc. 423. Ancient maps,
surveys, etc., are also competent evidence: McCaus-
land v. Fleming, 63 Pa. 36; Penny Pot Landing v. City
of Phila., 16 Pa. 79; Shields Lessee v. Buchannan, 2
Yeates 219, 221; 1 Wharton's Law of Evidence (2d ed.),
section 669; see also Wigmore on Evidence, section 1665.
An ancient town plot is admissible in a private action
between lot owners (Moul v. Hartman, 104 Pa. 43), as
are declarations of a deceased surveyor made in con-
nection with his survey: Kramer v. Goodlander, 98 Pa.
366; and see Borough of Birmingham v. Anderson, 40
Pa. 506; Bender v. Pitzer, 27 Pa. 333; Buchannan v.
Moore, 10 S. & R. 275. The real question decided in
Spalding v. Hedges, 2 Pa. 240, was that the Gazetteer
was not the best evidence attainable and, hence, not
competent, to prove the distance between St. Louis and
Bellefontaine; but that does not conflict with the gen-
eral rule to which we have referred.

Crumrine's History of Washington County was prop-
erly excluded as merely the local history of a single
county, not the one here in question, and in no sense a
general history, and was seemingly written about forty
years after the time here in question. There was no error
in refusing defendant's offer to prove by the witness,
Andrew Brown, inter alia, that his father bought real
estate at Gray's Landing in 1846. That was apparently

an immaterial matter, but, if otherwise, there was nothing to show a lack of better evidence of the purchase than the hearsay knowledge of a witness born two years thereafter. This part of the offer being incompetent, justified a rejection of the whole; as to the other matters embraced therein we express no opinion. The improperly rejected evidence, while not conclusive of the statements therein made, nor of knowledge thereof by the parties to the Armstrong deed, tends to show general knowledge of the Pittsburgh vein in 1847 and strengthens the contention that the parties contracted with reference thereto. See Phila., Balt. & W. R. R. Co. v. Perna, 272 Pa. 569; Hamilton et al. v. Hastings, 172 Pa. 308. It is certain the parties had in contemplation coal of which they had knowledge, and contracts should be interpreted according to the understanding of the parties who executed them: Gillespie v. Iseman, 210 Pa. 1; Vulcanite Paving Co. v. Phila., 239 Pa. 524. In such case, evidence tending to show general knowledge of the subject of the contract in the community, at the time in question, is relevant, for parties are presumed to know facts of public notoriety: McMillin v. Titus, 222 Pa. 500.

The premises or granting part of the deed in question conveys but one vein of coal and is not enlarged so as to embrace both by the above-quoted words in the habendum, viz: "together with the privilege of mining and taking the stone coal within the boundaries described"; these words properly refer to the stone coal granted earlier in the deed. The habendum cannot change the subject of the grant, while it may explain and qualify the interest granted or define its extent: Darrah v. Darrah, 202 Pa. 492, 495; Watters et al. v. Bredin, 70 Pa. 235, 237; Lancaster Bank v. Myley, 13 Pa. 544, 551; Manning v. Smith, 6 Conn. 289; Brown v. Manter, 21 N. H. 528. The habendum of a deed must give way when it is repugnant to the premises: Karchner v. Hoy, 151 Pa. 383; Tyler v. Moore, 42 Pa. 374, 386; 18 C. J. p. 331, section 329.

The deed was properly construed as the conveyance of a vein of coal, and not a mere license to take coal therefrom (Advance I. S. Co. v. Eagle M. C. Co., 267 Pa. 15; Caldwell v. Fulton, 31 Pa. 475; Kingsley v. Coal & Iron Co., 144 Pa. 613), and the fact that but a single vein of coal is therein mentioned is a circumstance tending to show the contracting parties knew of no other.

True, the construction of a deed is for the court, yet, whenever the question of what property it conveys is doubtful and depends on evidence aliunde, the case is for the jury (Trustees of Kingston v. L. V. Co., 241 Pa. 469; Safe Deposit & Trust Co. v. Mfg. Co., 229 Pa. 295; Little v. Greek, 233 Pa. 534; Lycoming Mutual Ins. Co. v. Sailer, 67 Pa. 108; Hoffman et al. v. Danner et al., 14 Pa. 25; Brownfield v. Brownfield, 12 Pa. 136; Scott v. Sheakly, 3 Watts 50; Collins v. Rush, 8 S. & R. 147) and here the trial judge properly so held.

In 1899, while Dowlin was holding the title now vested in the plaintiff he conveyed the Pittsburgh vein of coal in an adjoining tract to Josiah V. Thompson et al. and one of the courses in that deed says, "thence by coal claimed by Dawson's heirs north sixty-six degrees six minutes West sixty perches"; while that is this coal it is not an admission of adverse ownership. Then there is the testimony of Charles Kerr to the effect that about the same year he asked Dowlin if he was going to try to hold the coal and the latter said he did not have money to go to law, but sometimes talked that he would try to do something about it. As the deed of the surface from Dowlin to Randolph, made in 1899, does not mention either vein of coal, it cannot be construed as an election by Dowlin to take the Waynesburg vein. There is nothing in the record to show any admission by Dowlin that he was not the owner of the Pittsburgh vein, or any conduct on his part to justify the defendant's claim of an estoppel, and the trial judge properly refused to submit that question to the jury; for whether an estoppel re-

sults from established facts is a question of law: Keating v. Orne, 77 Pa. 89.

For nearly twenty years prior to the commencement of this suit, the Pittsburgh vein of coal had been assessed to and the taxes paid thereon by the defendant and by Josiah V. Thompson, her predecessor in title. While such assessment and payment of taxes is evidence of a claim of possession, it does not prove title (James et al. v. Bream et al., 263 Pa. 305); but based largely thereon the trial judge submitted defendant's claim of adverse possession to the jury, and that was certainly all to which she was entitled upon that branch of the case. As a new trial will be granted, it is unnecessary to discuss the question of the alleged improper remarks of counsel.

For the exclusion of the state geological surveys, the report of the Monongahela Navigation Company and the Taylor history, the judgment is reversed and a venire facias de novo awarded.