## ISAAC BROWNFIELD *v.* JOHN BROWNFIELD.

1. Where a testator devising land lays down a line of division "to a post, a corner, &c.," and there are two such posts, the will pointing to neither in exclusion of the other, though external circumstances may do so, a contest as to which of those posts was intended is one of fact, which does not depend in any degree on legal direction.

2. To remove a latent ambiguity in a will, circumstances indicative of the state of the testator's affections towards the object of his bounty, or the relative circumstances of his connexions, or his acts and declarations in respect of the thing given, or the person of the donee, are constantly admitted. With this view, the relative amount of advancements, and the difference in value of the portions of the land, would be proper evidence.

ERROR to a special Court of Common Pleas of Fayette.

*Oct.* 22. This was an action of ejectment brought for "about thirty acres of land," by John Brownfield against Isaac Brownfield. The controversy was as to which of two lines, E H or E F, as laid down in the draft, was the boundary between the parties.

The whole tract, containing 263 acres, was patented by Thomas Brownfield in 1773. In 1796, he conveyed to his son John, the plaintiff, in consideration of natural love and affection, the part A, and afterwards, on 25th April, 1814, he further conveyed to him for $300, some two acres of C, at the point E, with saw-mill, water-right, &c. By his will, proved October, 1815, he devised as follows:

" I give and devise to my youngest son Isaac and his male heirs, the south side of my home-place by a line of division as follows: Beginning at the saw-mill race, four perches south of the dwelling-house, near said saw-mill, *and thence supposed nearly an east course to a post, a corner of John Brownfield's and my home-place*, and the other part of my home-place, I give and devise to my eldest son John and his male heirs, him yielding and paying to my son William $500. The above devise to take effect at the decease of my wife and Elizabeth and Ann Brownfield."

The "home-place" referred to by the testator, was composed of the parts of the land patented, marked B, C, and D, excepting the two acre mill seat, &c. The following draft will render the evidence, the charge of the Court below, and the opinion of this Court, of more easy comprehension

The plaintiff called John Patrick, who testified that he made the survey and draft; that he started at the dwelling-house [this is the dwelling-house referred to in the will as being near the saw-mill], and ran south $44\frac{1}{4}°$ west, to the nearest point of the race, marked E, and that, by going any more south from said dwelling-house than he had done, he could not have struck the race at four perches distant. Thence he ran the line E F, S. 67° E.; then returned and ran the line E H, N. $82\frac{3}{4}°$ E.; then returned again and ran the line E G due east; that the line E F *extended*, would cross Laurel Hill *north* of the National Road, the property being *south* of said road; that the line E F is 23° from an east course, and the line E H $7\frac{1}{2}°$ from an east course.

James Brownfield, a son of testator, and executor of his will, testified, that he was the scrivener of the will; that there was a post at the point marked F, and stones round it; that this post marks a corner between John Brownfield and the home-place; that he first saw it there when the line was run between John Brown-

field and the home-place, and afterwards; that he could not recollect whether there was any other post corner or not; that the saw-mill is north of the house on C, and that Thomas Brownfield's widow, and Elizabeth and Ann Brownfield were all dead.

Plaintiff then read from the deposition of John Deford:—

"I purchased the whole interest of William Brownfield under his father's will; Thomas Brownfield, *the son of plaintiff*, paid me *five hundred dollars*, coming to William under his father's will;" and gave in evidence the surveyor's book of Fayette county, showing a draft of a survey adjoining the Brownfield tract, made in 1776, under a warrant to John Hopwood, Sr., which survey corners at the point F, and calls for *a post corner there.*

Plaintiff rested, and defendant gave in evidence deed February 18th, 1796; Thomas Brownfield to John Brownfield, for 101 acres, strict measure, being the part marked A on the draft; this deed calls for stones at F, and for posts at the points marked H and K.

Freeman Lewis testified that he surveyed this land. That the part marked C contains 26 a. and 90 p. That at the corner H there was no post, but near the corner he found a white walnut marked as a pointer. That he found nothing at F; that it was in a stone quarry; and that the race was more west than south of the house.

Defendant then read the deposition of John Deford.—I have been acquainted with the Brownfield home-place since the year 1793. I have known the division-line between the Brownfield home-place and John Brownfield, for a number of years. I knew it from the first corner at Hopwood's (at F), to the other corner (at H), that is, the corner above John Brownfield's orchard, in the edge of the woods, which was designated by a short stake about as thick as the calf of my leg, about twenty inches high. I first saw the before-mentioned stake in 1817. When I first saw it, it appeared to be a stake of some considerable time standing. When I first knew the corner at Hopwood's, it was a stone corner. My brother and myself cleared Hopwood's land up to that corner. David Stitts, now Hopwood, cornered at the same corner with Hopwood's land. I was acquainted particularly with this land, because Hopwood was my first, and Thomas Brownfield was my second father-in-law. I had an interest in the land which cornered at the post or stake above Brownfield's orchard, in right of my wife, Lydia Brownfield, and I occupied a part of the Brownfield tract up to this line for more than twenty years, between John Brownfield's and the home-place.

I consider John Brownfield's part of the tract as being most valuable.

Cross-examined.—The first knowledge I had of the Hopwood corner, was in the latter end of the year 1793; the corner, at the time I speak of, was made of one stone, and other stones piled round it: I don't think I saw a stake at this corner before the controversy; if I did, father Hopwood stuck it there when he was showing us where to clear to and set the fence. I think it was in the year 1795. Father Hopwood's patent calls for a stones corner, to the best of my recollection. I mean the plot, instead of patent, calls for stones corner. At the time John Brownfield got the land it was all woodland.

Moses Hopwood, Sr., testified that the corner of his tract (at F), in the line of Thomas Brownfield, was stones when he first saw it —was a stone heap in the woods, cast there he supposed, where the post stood. That he saw that corner several times afterwards, but don't recollect to have seen a post there at any time. That the *patent* dated in 1786, calls for a *post* there. Thinks that John's land would be most valuable, if equally divided.

John McCoy testified that he saw a post at the corner marked H, a good many years ago—over twenty years ago. That he saw it several times. Was working on the hill, and passed near it every day, and lives adjoining this land. That he would rather have John's part. That the post stood up 3 feet and was 5 or 6 inches through.

Defendant then gave in evidence the record in the Common Pleas of Fayette county, of an action of ejectment, between the same parties, for the same land, with verdict and judgment in favour of Isaac Brownfield, in November 1841.

Roberts Barton testified that he should think John's land most valuable; that Isaac's land lays very well, is good and level; that John's is hilly. That Isaac has the most coal, but not so convenient as John's.

Defendant rested, and plaintiff gave the following rebutting evidence:

Deed April 25, 1814. Thomas Brownfield to John Brownfield, for the saw-mill. Consideration $300.

Deed 6th December, 1793. John Hopwood to Moses Hopwood, for the tract adjoining the Brownfield land, and *cornering at F*, which deed calls for a *post corner at F*.

Deed June 6, 1798. Moses Hopwood to John Hopwood for the same land, calling for a *post corner at F*.

Deed November 20, 1818.   Moses Hopwood to Joseph Watkins, calling for a *post corner at F.*

James Brownfield testified that he supposes Isaac's is the best, and would prefer it as a farm; that the clearing, homestead, barn, &c., was on Isaac's part, and that it is where his father lived; that John's part was unimproved.

Plaintiff then offered to prove that John Brownfield, the plaintiff, worked for his father for about ten years after he became of age (which was the inducement to his father to make him a gift of the 101 acres), and further, that Isaac, the defendant, never worked any for his father.

To this evidence defendant objected, and the Court overruled it.

The defendant having on his part given some evidence that there was "a post corner of John Brownfield and the home-place" (so called for in the will), at the point marked H on the plot, as well as at F, thereby raising, if believed, a latent ambiguity in the will, the plaintiff then offered to show by James Brownfield, the executor and scrivener of the will, that the *testator intended* the line to run to the *post corner at F.*  To this offer the defendant objected: "There is no ambiguity in the will, and it cannot be explained by parol."   The Court overruled the evidence.

Plaintiff then offered the deposition of Ann Brownfield, deceased, the daughter mentioned in the will, to prove that testator told her how he meant to make his will, and that the division line between John and Isaac was to run to the *post corner at F.*   That afterwards, and not long before he died, she saw him stake off this line, and he came back and told her he had staked it up to *John's corner at F,* and that she afterwards *went* and *saw the stakes* up to *that corner.* To this offer defendant also objected: "It is parol evidence to explain the language of the will."   The Court overruled the evidence, to the rejection of which, and of the preceding offers, the plaintiff excepted.   Plaintiff closed.

Defendant then called Moses Hopwood, who testified that he had seen the corner F frequently, but "never saw anything but stones; supposed the post had *rotted down;* they looked as if they had been thrown round a stake."

The evidence being closed, the defendant requested the Court to charge that—

1. There is no ambiguity in the language of the will as to the corner referred to, of his home-place and John Brownfield, and

that therefore the jury are bound to regard the point at the corner H as the one intended by the testator.

2. That there is no ambiguity in the language of the will, and the testimony received on the part of the plaintiff of a post at F, a long time ago, tends to contradict the plain terms of the will, and that the written, not the parol evidence should prevail.

3. That, "while a subject exists which satisfies the terms of a will, and to which they are perfectly applicable, there is no latent ambiguity," and in such case the construction of the will is a question of law. That therefore, if the jury find in this case that the language of the will of Thomas Brownfield is perfectly applicable to the line terminating at the point marked H, they should find for the defendant.

The Court below (HOPEWELL HEPBURN, President) charged the jury to this effect:

"If the line E F be the one intended by the testator, the plaintiff will be entitled to your verdict; if E H be that line, the defendant will be entitled to your verdict.

"The testimony in regard to the value of the land, and in regard to the land conveyed to John in 1796, has nothing to do with this controversy.

"There are two corners of John Brownfield and the home tract contended for, and said to be post corners, one of them $7\frac{1}{2}°$ from an east course, the other 23° from an east course. That which is nearest an east course gives the plaintiff John Brownfield about 28 or 30 acres only. The other line gives him about 57 acres. The objection I have to that line nearest an east course is, that it would give to John only the north-west end of the tract, and would give Isaac, not only the south side, but would give him more than one-half of the northern boundary of the tract, and about three-fourths of the entire tract. Now, how he can be said to take only the south side by a line which gives him, for half the width of the tract, the entire tract north and south, I am at a loss to conceive.

"Also the line due east from the point of beginning, shows that the line claimed by defendant would throw a considerable portion of the land north of that line into the defendant's tract, so that in that point of view also, he would get more than the south side of the tract.

"Then again, the will calls for a south course from the house to the saw-mill race. If the testator intended by this, that the race was south of the dwelling-house, which the language would seem to

imply, then the compass shows that he was mistaken in their position, and if mistaken in the bearing of one line, it would be a reasonable presumption that he made a corresponding error as to the bearing of the other line, and if so, it would make the line claimed by plaintiff not far from what he would have supposed an east course.

"The fact that the south side, only, is devised to Isaac, and that the line E H would give him more than three-fourths of the whole, and about half of the northern line of the tract; that the general intention to be inferred from the amount to be paid by him, and the other language of the devise appears to indicate something like a division, and not a mere corner of the tract for John, and what I suppose to be the ascertained error of the testator in the supposed bearing of the lines, induces me to prefer the construction which would fix the line E F, or the corner F, as the one intended by the testator, provided you find the fact, that the corner F *was* a post corner.

"The location of the line on the ground is for you. Was F a post corner? If it was, I think the will directs us to that point. But if it was not, and the corner H was a post corner, and the only one in an easterly direction from the place of beginning, then that is the true corner, and your verdict should be for the defendant; if not, or if both H and F were post corners, then your verdict should be for the plaintiff.

"The facts are for you; you will consider the whole case and return such verdict as you think proper.

"The defendant's first point is already answered. The second point speaks of parol evidence contradicting the will. I know of no such evidence in the case. But if there is, certainly the will, and not the parol evidence, must direct us. It is the will that fixes the line, and by it we must be governed.

"The law is correctly stated in the 3d point, and is sufficiently answered in the charge."

Verdict and judgment for John Brownfield, the plaintiff.

The errors assigned were that the Court below erred—

1. In giving binding directions, or declarations of opinion, to the jury.

2. In presenting those facts only which favoured the plaintiff, and omitting those which favoured the defendant.

3. In not answering the points as requested.

4. In misconceiving the obvious meaning of the will as to the

starting point at the saw-mill race, four perches south of the dwelling-house.

*Miller*, *Deford*, and *Veech*, for the plaintiff in error.

1. The Court say there is a reasonable presumption that testator meant the line E F; that *they* prefer that line; that if F was a post corner, the will directs us there; that if H and F were post corners, the verdict should be for plaintiff; and only for defendant if H was the only post corner in an easterly direction. These expressions must have led the jury to think the Court had decided these facts: Work *v.* Maclay, 2 S. & R. 417; Jones *v.* Wilder, 8 S. & R. 150; Hershey *v.* Hershey, Id. 333; Nieman *v.* Ward, 1 W. & S. 68.

2. The Court puts the case as if it were a division of B, C, and D, between John and Isaac, and puts entirely out of sight the gift of A to John, and its value. The whole should be considered: especially the value of A, to determine the intention: Marshall's Appeal, 2 Barr, 388; Barr's Est. Id. 428; 6 Barr, 69; 4 Rawle, 195; Id. 356.

3. The first point, if answered at all, was answered evasively, and the second contradictorily. If the case had been put to the jury on the doctrine of the third point, instead of upon the directions to find for plaintiff, if both H and F were post corners, the verdict must have been different. That point is sustained by Wusthoff *v.* Dracourt, 3 Watts, 240; Trustees *v.* Sturgeon, 9 Barr, 321.

4. The starting point was not ascertained by Patrick's survey, it was created. The line E F would certainly be nearly at right angles with Patrick's line S. 44¼° W., and therefore the Court think E F is the line indicated in the will. But it was not necessary to ascertain the point E in that way. The testator did not mean due south, but in a southerly direction. The way to have ascertained the point would have been to have run south from the house 4 perches, and then west to the race, and where that line touched the race the point E should be.

*J. K. Ewing*, *N. Ewing*, and *Fuller*, contrà.

1. The Court expressly leave the facts to the jury.

2. The omission to present matters favouring one or the other side is not error: Fisher *v.* Filbert, 6 Barr, 69.

3. There is no ambiguity in the language of the will; the ambiguity is latent, and was raised by defendant's evidence. The jury

were not bound, as of course, to regard H as the corner designated by testator.

4. The call for the natural object, the race, controls course and distance: 7 Wheaton, 7; Brandt v. Ogden, 1 Johns. 157.

A latent ambiguity was raised on trial, by the defendant's evidence: 3 Caines, 5, 11 Johns. 215, 1 W. Bl. 60, 5 Coke, 68, Powell v. Biddle, 2 Dall. 70, Vernor v. Henry, 3 Watts, 391, 3 Taunt. 150, 1 Johns. C. R. 234, Roberts's Will, 14, 3 Stark. Ev. 1028, 3 Watts, 240; and to ascertain the intent of the testator, we must look, first, to the will itself: Nourse v. Lloyd, 1 Barr, 233, Trustees v. Sturgeon, 9 Barr, 329; and this failing, then to extrinsic evidence of testator's acts, declarations, &c., &c.

Out of abundant caution we offered the evidence which was rejected. The will we thought was in fact enough to clear up that ambiguity. The testator makes a *division* of the home-place, and gives the *south* side to Isaac, the other to John. The line E H would give more than the south side, and would give John only a corner, for which he is to pay $500.

Testator was mistaken in his idea of south; yet the starting point must be at the race. That point fixed, the dividing line running from it must be fixed from the other part of the will, if it can be done: Barr's Appeal, 2 Barr, 431, 2 B. & Ald. 448, 10 Shepley, 217. Now E F would be nearly at right angles with, and east of, according to his ideas of the bearings, the testator's supposed south line from the house to the race; while E H would form a very acute angle with it. E F is evidently the testator's "*thence supposed nearly an east course.*"

The evidence offered by us having been rejected, and it being manifest from the will itself that E F was the line, it was the duty of the Court to give it the proper construction: 3 Watts, 391, 10 Mass. R. 384, Turbett v. Turbett, 3 Y. 87, Brown v. Brown, 6 Watts, 54, Fleming v. Kerr, 10 W. 444, 2 Barr, 430, 3 Watts, 240, 9 Barr, 329, Vernor v. Henry, 6 Watts, 193, Hunt v. Devlin, 8 Watts, 405.

The opinion of this Court was delivered by

GIBSON, C. J.—The key to the difficulty in this case is, that it arises from a latent, not a patent, ambiguity, produced not by the words of the will, but by circumstances collateral to it. Had the contemplated monument of the division between the brothers been described as *the* "post, a corner of John Brownfield and my home-

place," the definite article would have indicated the existence of an apprehension that there was no other post corner which answered the description; and the ambiguity caused by the testator's ignorance of the fact, and not by any uncertainty in his words, would clearly have been a latent one. Is it less so, when, using the indefinite article, he describes the monument as *a* post corner? It is plain he supposed that there was only one such; for had he known there were two, he surely would have specified the intended one by reference to peculiar circumstances connected with it. Nothing could be more indefinite than a bequest simply to John Smith; yet it would be unambiguous, standing on the words of the will, though it might be otherwise standing on extrinsic circumstances; and a contest about the identity of the legatee would be determinable as an unmixed question of fact, the Court having no more to do with it than to inspect the evidence pertinent to it, and pass it to the jury. As regards the corner, the contest in the Court below was such; and the question to be solved was one of fact, which did not depend in any degree on legal direction. "Yet," said the judge, referring to the diagram, "the location of the line on the ground is for you. Was F a post corner? If it was, I think the *will* directs to that point. But if it was not, and the corner H was a post corner, and the only one in an easterly direction from the place of beginning, then that is the true corner, *and your verdict should be for the defendant;* if not, or if both H and F were post corners, *then your verdict should be for the plaintiff.*" But the will did not point to either of the corners in exclusion of the other, though external circumstances might do so. It gave no directions, but to run by an easterly course to a post corner of John Brownfield's land and the testator's home-place : and if there were two such, the will did not point to either of them in particular. That the verdict ought to be for the plaintiff, if both H and F were found to be post corners, was not a necessary conclusion of either fact or law. It is true, the course of the contemplated line was supposed by the testator to be nearly east; but that was a matter of guess which leads to no result. I can at present recall but one case in which a legal conclusion has been drawn from modes of designation. Where, as in Vernor *v.* Henry, 3 Watts, 393, a concurrent designation by name and by description disagree, the rule is that the former shall be taken to be the more worthy in certainty. But here there was no disagreement, the name and the description answering in the same degree to each of the corner posts; so that nothing was to be deter-

mined but a pure question of fact. True, the judge told the jury that the location of the line on the ground was for them; but if he did not mean to instruct them that legal conclusions would diversely spring from the two facts put before them, as the one or the other of them should be found, they might readily suppose him to mean it.

The impression that the question of intention stood on the words of the will, seems to have led also to the exclusion of evidence which, we think, ought to have been received. To remove a latent ambiguity, circumstances indicative of the state of the testator's affections towards the object of his bounty, or the relative circumstance of his connexions, or his acts and declarations in respect to the thing given, or the person of the donee, are constantly admitted. The competency of such matters was considered in Vernor *v.* Henry, already quoted; but it is unnecessary to recur to authority for the principle. In applying it to the evidence in this case, it is difficult to say whether the testimony of the scrivener, that the testator *intended* the line to be run to the post corner at F, was proper or not. If it was offered as proof that the testator had said so, it ought to have been admitted; but if it was offered as the opinion of the witness, it was not admissible, though the facts on which it was formed might be so. Clearly, however, the deposition of Anne Brownfield was competent. If the testator told her he meant to direct by his will that the line of division should be run to the particular corner; that she saw him begin to stake it off in that direction; that he afterwards told her he had staked it to that corner; and that she subsequently saw the stakes leading to it; these facts would be not only competent but powerful evidence that the particular corner was the one called for in the will. As the presumption is, in the first instance, that a testator aims at equality, the relative amount of the advancements and the differences in value of the portions of the land would be proper for consideration.

The questions of evidence, having been ruled for the defendant in error, are considered on this writ of error by consent of the parties.

Judgment reversed, and *venire de novo* awarded.