# Miller's Estate (No. 1).

*Will—Latent ambiguity—Parol evidence—Evidence.*

Parol evidence is admissible to explain a latent ambiguity in a will, or to apply its provisions to the subject or person intended when the description is defective, uncertain or too general to be understood.

Where the meaning of a devise is uncertain the law will adhere as closely as possible to the general rules of inheritance, and whosoever claims against the law of descent must show a satisfactory written title.

Parol testimony is admissible to show whom the testator meant by the words contained in his will "William Wilson's children," where it appears that he had no relatives answering such description, and the will itself is silent as to the identity of the William Wilson therein named. In such a case it may be shown that testator had a sister married to one Seth Wilson, who had a brother named William Wilson, that testator frequently confused William with Seth, and that testator stated to the scrivener who wrote his will that he meant by William Wilson's children, the children of his sister. The court in such a case will award the fund to Seth Wilson's children, but will not limit the class merely to Seth Wilson's children by his first wife, testator's sister.

Argued May 10, 1904. Appeal, No. 121, April T., 1904, by Ella Viola Ingram, from decree of O. C. Beaver Co., Dec. T., 1903, No. 5, distributing estate of Godfrey Miller, deceased. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Exceptions to report of Dan H. Stone Esq., auditor.
The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*William A. McConnell*, with him *William H. Cox*, for appellant, cited: Brownfield v. Brownfield, 12 Pa. 136; Vernor v. Henry, 3 Watts, 385; Abel v. Abel, 201 Pa. 543.

*Robt. Ritchie*, of *Cooper & Ritchie*, with him *J. R. Martin* and *E. S. Weyand*, for appellee.

OPINION BY MORRISON, J., November 21, 1904:
There is no dispute about the facts in this case, except as to

whom the testator means by "William Wilson's children," and we therefore adopt all of the other findings of fact by the auditor, to wit: "First, Godfrey Miller died December 27, 1901, leaving to survive him two brothers, Jacob Miller and Henry Miller, and one sister, Mrs. Hannah Miller Staub, and nephews and nieces, children of his deceased brothers and sisters, as follows, to wit: children of John Miller, deceased, children of Andrew Miller, deceased, children of Christler (sometimes called Christian) Miller, deceased, and children of Mary Miller Wilson, deceased, wife of Seth Wilson.

"Second, the relatives of the decedent that are claimants under the will of the decedent are as follows, to wit:

"(a) Christler Miller's children, viz: Minnie Metz, wife of Adam Metz, George Austin Miller, Leonard Ernest Miller, Jennie Blanche Miller, Alice Clark Miller, Edith Goldy Miller, Norman Blair Miller, Nora Lee Miller and Margaret Ellen Miller.

"(b) Mary Miller Wilson's children by Seth Wilson, her husband, viz: Mrs. Alla Morgan, Mrs. Ella Viola Ingram and Rose Wilson.

"(c) Mrs. Hannah Miller Staub, sister of decedent.

"(d) The children of Mrs. Andrew Miller (née Beason), deceased, viz: William G. Miller, Darwin Miller, John A. Miller, Maggie Miller McDole, Rosa Miller Reark and Lorena Miller Cochran.

"Third, in addition to the claims of the aforesaid relatives of the decedent are the claims of the children of William Wilson, who are not related to the decedent; the names of said children are as follows, viz: Margaret Figley, Elizabeth Winkle, Alice M. Lais, John D. Wilson, Sarah McKean, Frank F. Wilson, Rebecca Wilson Rankin, William Wilson, Dallas Wilson, Mabel Wilson and Naomi Wilson, the two last named being minors having for their guardian, William McKean."

The portion of the last will and testament of Godfrey Miller, deceased, over which the dispute arises is as follows: "To my brother Christian Miller's children, William Wilson's children, my sister, Mrs. Staub, my sister-in-law, Mrs Andrew Miller's children to be equal beneficiaries in balance of my property or money after the conditions of this has been complied with."

The learned auditor found as a fact that the legatees desig-

nated by the testator in his last will and testament aforesaid are as follows, to wit: Christian Miller's children as designated in clause (*a*) supra.

William Wilson's children as designated in clause (*b*) of the auditor's fifth finding of fact.

Mrs. Hannah Miller Staub, sister of testator.

The children of Mrs. Andrew Miller (née Beason), deceased, as designated in clause (*d*) supra.

The distribution made by the learned auditor, which was approved by the court below, excludes the children of Mary Miller Wilson by Seth Wilson, her husband, from any share in the estate and includes and distributes to the children of William Wilson, not blood relatives of the decedent. And it is over this distribution that the controversy arises.

The assignments of error are as follows: 1. The court erred in dismissing the following exception to the auditor's report: The auditor erred in the fifth finding of fact or so much thereof as reads as follows: "5th. The legatees designated by the testator in the last will and testament aforesaid are as follows, viz: (*b*) William Wilson's children, viz: Mrs. Margaret Figley, Mrs. Elizabeth Winkle, Mrs. Alice M. Lais, John D. Wilson, Mrs. Sarah McKean, Frank T. Wilson, Rebecca Wilson Rankin, William Wilson, Dallas Wilson, Mabel Wilson and Naomi Wilson."

2. The court erred in dismissing the following exception to the auditor's report: "The auditor erred in his second finding of law, which was as follows: William Wilson's children are entitled to share in the distribution."

3. The court erred in dismissing the following exception to the auditor's report: "The auditor erred in his third finding of law, which was as follows: Seth Wilson's children are not entitled to share in the distribution."

4. The court erred in dismissing the following exception to the auditor's report: "The auditor erred in his fourth finding of law, which was as follows: Distribution should be per capita among the legatees."

5. The court erred in entering the following decree: "And now, February 1, 1904, the exceptions to the auditor's report are dismissed and the report is confirmed absolutely."

The important question raised by these assignments is

whether or not parol testimony is admissible to show whom the testator meant by the words contained in his will, "William Wilson's children." It is conceded that the testator had no relatives who were the children of any William Wilson, but that he had a sister, Mary Wilson, who was married to Seth Wilson, and that Mary Wilson was deceased and left to survive her three daughters by her husband, Seth Wilson. The learned auditor and the court below were of the opinion that there was no latent ambiguity in this will which would justify the introduction of parol testimony to show who was meant by "William Wilson's children." In this we think there is error. The name William Wilson is a very common one and there is not one word or hint in this will to show what William Wilson was meant, and all the ground that the auditor had for awarding a portion of the testator's estate to the children of one William Wilson was simply because they appeared and claimed it and proved that their father's name was William Wilson. The will did not describe William Wilson in any manner whatever, nor did it locate him, nor did it contain anything within its four corners to indicate what William Wilson was referred to. We therefore unhesitatingly hold upon all the authorities that it was competent and necessary to introduce parol testimony to determine to whom this clause of the will referred. It will not do to say that the court was justified in awarding a portion of the testator's estate to children of one William Wilson because no other William Wilson's children appeared. Without parol testimony it would have been utterly impossible to have disposed of this question if the children of several William Wilsons had appeared and claimed this fund, and we do not think the fact that only one set of such children appeared changes the rule.

Now let us consider for a moment the testimony of Mr. Morgan, who wrote the will of Godfrey Miller. Mr. Morgan sworn. " Q. Did you know Godfrey Miller, deceased? A. Yes, sir. Q. Mr. Morgan, I show you the will of Godfrey Miller, duly probated, etc., and ask you if that is the will you wrote for Godfrey Miller. A. Yes, sir ; that is the will ; that is my handwriting. Q. When did you see Godfrey Miller; what time of the day did you see him ? A. About eight o'clock in the morning. Q. He died at what time ? A. Sometime

that night.   Q. Were you sent for to write his will?   A. Yes, sir.   Q. Who came to see you about writing the will?   A. Mr. Lay.   Q. Did you go then to Godfrey Miller's residence? A. I went to Henry Weirch's residence where he was. Q. What was the condition of Godfrey Miller when you found him that day?   A. Well, he was—he seemed to be all right—rational and all that.   Q. Was he very ill?   A. He was very nervous ; but he was always nervous when he was on his feet.   Q. Was he sick?   A. Yes, sir, he was sick.   Q. How long were you there?   A. About three hours.   Q. Was the will written while you were there ?   A. Yes, sir, I wrote it while I was there.   Q. Whom did Mr. Miller mean by ' William Wilson's children ? '   A. His sister's children.   Q. His sister who was married to a Wilson ?   A. Yes, sir."   Mr. Richie : " Q. State what he said.   A. I asked who this Wilson was—I did not know ; and he said it was ' my sister's children.' "   Mr. Cox : " Q. He so stated that to you ?   A. Yes, sir, he so stated that to me."

We now turn to the testimony of Seth Wilson.   " Q. What is your name ?   A. Seth Wilson.   Q. Where do you live ? A. Beaver Falls.   Q. Have you a brother William ?   A. Yes, sir.   Q. Is he living ?   A. Yes, sir.   Q. Where does he live ? A. He lives at Lock No. 3.   Q. Is he married ?   A. Yes, sir. Q. How many children has he ?   A. Seven, I believe.   Q. Is Mrs. Wilson dead—your wife ?   A. Yes, sir.   Q. When did she die ?   About when?   A. In 1877.   Q. Who was Mrs. Seth Wilson ?   A. She was my wife—Miller.   Q. Miller, and a sister of Godfrey Miller ?   A. Yes, sir.   Q. How many children had you by that marriage ?   A. Three.   Q. Who are they ?   A. Mrs. Al Morgan, Mrs. Ola Engle and Miss Rosie Wilson.   Q. Did you know the decedent in his lifetime? A. Yes, sir.   Q. Did he ever confuse your name with William Wilson ?   A. Yes, sir, he often called me William.   Q. And he made the same mistake with your brother by calling him Seth ?   A. Yes, sir."

Now, if we are correct in holding that the clause in the will to " William Wilson's children " was too indefinite and uncertain to justify a distribution without the aid of parol testimony then we have the question presented in this form : The positive, clear and precise testimony of Mr. Morgan, who wrote the

will, that the testator told him at the time he meant by William Wilson's children the children of his deceased sister, who married a Wilson. In addition to this we have the positive and clear testimony of Seth Wilson that Godfrey Miller was in the habit of calling him William and calling his brother William, Seth. Upon this state of facts we find ourselves unable to agree with the .conclusion of the learned auditor, and the court below, that these strangers to the blood of Godfrey Miller, who happened to have a father named William Wilson, can come in and take the portion of this estate, which we believe, beyond all question of doubt, was not intended for them by the testator.

In our opinion it is idle to argue that this will is free and clear of latent ambiguity, and that a distribution can be made thereunder without the aid of parol testimony. The learned auditor found that the testator made a mistake in designating Christian Miller's children, as the correct name was Christler, and therefore the auditor had to consider something dehors the will in order to distribute a portion of the estate to the children of Christler Miller, but he seems to have found no difficulty in doing this. Again the testator says: "My sister-in-law, Mrs. Andrew Miller's children," but at the time this will was made he had no sister-in-law, Mrs. Andrew Miller, as she had married one Beason long before this, and was dead when the will was made and proved. Therefore, in distributing to the children of Mrs. Andrew Miller, the learned auditor had to consider matters dehors the will. But he seems to have had no difficulty in doing this. But when he comes to the question of who are the children of William Wilson, then he throws out all of the testimony and all of the circumstances, ignores the blood relationship between the children of Seth Wilson and the testator, and awards this portion of the estate to the children of an utter stranger to the blood of the testator.

In support of his conclusion the learned auditor cited, among other cases, Root's Estate, Root's Appeal, 187 Pa. 118, and quotes from Mr. Justice DEAN as follows: "The modern doctrine is that where a subject exists which satisfies the terms of the will, and to which they are perfectly applicable, there is no latent ambiguity. Evidence is only admitted dehors the will from necessity, to explain that which otherwise would

have no operation. If the rule were held otherwise, a person could feel no security in making a will. His intention, clearly expressed in writing, and the object of his bounty found, in all respects answering the description, might be defeated, and the statute relating to wills be made practically inoperative." We think the learned auditor and the court below not fortunate in basing their decision upon that case. The will was "To my nephew, William Root." There was a person answering this description exactly, the son of the testator's brother, a blood nephew of the testator, and the contest arose between that William Root and a William Root, nephew of the testator's wife. Now the nephew of the testator's wife was not of kin to the testator, not of his blood. But the William Root, son of his brother, was of his blood and there was not the slightest ambiguity in the will. And this authority does not support the decision of the court below in the present case.

In Thompson v. Kaufman et al, 9 Pa. Superior Ct. 305, the principle in question is well settled in the syllabus thus: "Parol evidence is admissible only to explain latent ambiguities in a will or to apply its provisions to the subject or person intended when the description is defective, uncertain or too general to be understood." In our opinion this doctrine fits the present case precisely. The description "William Wilson's children" is defective, uncertain and too general to be understood, and this is the turning point in the controversy, and the moment resort was had to parol testimony it became as clear as the noonday sun, that the testator had in mind the children of Seth Wilson, who married a sister of the testator and whom he often called William. Seth had a brother William Wilson, and the testator was in the habit of confusing the names and calling his sister's husband "William."

It is not questioned that parol testimony may be introduced to explain a latent ambiguity contained in a will. This appears to be conceded by the court below, but it holds in the present case there is no latent ambiguity in the phrase "William Wilson's children." With this conclusion we cannot agree. Ambiguity is defined by Bouvier to be "duplicity, indistinctness or uncertainty of meaning of an expression used in a written instrument." "Latent is that which arises from some collateral circumstance or extrinsic matter in cases where the instrument

itself is sufficiently certain and intelligible." The words " William Wilson's children " are plain enough and can be understood without difficulty, but for the collateral circumstance or extrinsic fact that there are many William Wilsons who have children, and therefore there is a latent ambiguity which must be explained by parol testimony in order to effectuate the purpose of the testator. Another case upon this question is Appel v. Byers, 98 Pa. 479. In that case parol testimony was held inadmissible to show that the testator intended his illegitimate and not his legitimate nephew to be the object of his bounty. The will read: "It is my will, and I hereby devise that my nephew Philip Byers, shall have and hold, after the death of my wife, all my real and personal estate." The testator died leaving two nephews, one Philip Byers, a legitimate child, another Philip Byers, an illegitimate child. Of course in that case there was no ambiguity, and it is a wonder that any question was ever raised about it. The will was plain and named his nephew, Philip Byers. He had a legitimate nephew, Philip Byers, and this filled the rule of law that " a gift to children means legitimate children only, unless it appears from the context or from circumstances that illegitimate children must have been intended." Therefore, this case does not support the conclusion of the auditor and the court below. In the case of Brownfield v. Brownfield, 12 Pa. 136, we find the following pertinent remarks by Chief Justice GIBSON, in delivering the opinion of the court (p. 145) : "Nothing could be more indefinite than a bequest simply to John Smith ; yet it would be unambiguous, standing on the words of the will, though it might be otherwise standing on extrinsic circumstances ; and a contest about the identity of the legatee would be determinable as an unmixed question of fact, the court having no more to do with it than to inspect the evidence pertinent to it, and pass it to the jury." Now, let us substitute for John Smith the words " William Wilson's children " and read it " Nothing could be more indefinite than a bequest simply to William Wilson's children." Of course on the face of the will it would be unambiguous, but taken in connection with the fact that there are many William Wilsons who have children you have a pure question of fact to be determined upon evidence dehors the will. If that case is good law, and we think it is, then the learned auditor

and the court below erred in refusing to find as a fact that the testator meant by William Wilson's children the children of Seth Wilson, who married a sister of testator, and was called by him William. Again in Abel v. Abel, 201 Pa. 543, Mr. Justice POTTER, speaking for the Supreme Court (p. 545) says: " Where the meaning of a devise is uncertain, the law will adhere as closely as possible to the general rules of inheritance, and whosoever claims against the law of descent must show a satisfactory written title: " Grim's App., 89 Pa. 333.

In the present case we find nothing in the will, either expressed or by necessary implication, excluding the testator's nieces, daughters of his deceased sister and Seth Wilson, but we do find an uncertainty as to whom the testator meant by " William Wilson's children," until this question is inquired into as one of fact under the evidence, and admitting that the question is doubtful, then under all the authorities the doubt should be resolved in favor of the heirs or blood relatives of the testator and not in favor of strangers.

Thus far it is possible we may be understood as holding that no children of Seth Wilson, except by his first wife, sister of the testator, are entitled to share in the bounty of the testator. This is what we think the testator meant to have his will express, but owing to the blunder of the scrivener it was not so written. We think the parol testimony clearly shows an intent on the part of the testator to have his will written to " Seth Wilson's children, by his wife my sister." However, it was not so written, and while this parol testimony is sufficient to show who was meant by William Wilson, and is, under the authorities competent for that purpose, it is clearly incompetent to exclude any lawful child or children of Seth Wilson from the group designated as " William Wilson's children," and limit the testator's bounty to the three daughters born to Seth Wilson by the sister of Godfrey Miller. This is so because, on this subject, the parol testimony comes squarely in conflict with the will. To exclude a lawful child of Seth Wilson would require us to change this will. It legally includes all of the children of Seth Wilson, after it is applied to the proper Wilson by the parol testimony. And the testimony clearly shows that Seth Wilson married a second wife, and she bore him a daughter, now living, named Roxey Robinson.

She being a lawful child of Seth Wilson is included in the group designated as " William Wilson's children." We therefore hold that she stands on the same footing, under the will of Godfrey Miller, as the other three daughters of Seth Wilson. We so hold with reluctance because Roxey did not appear in the court below nor did she claim anything under said will. And, moreover, we do not think the testator intended to have his will so drawn, but the evidence which convinces us of this fact is not competent to reform the will and exclude a lawful child of Seth Wilson. This is settled by a long line of cases.

The case must go back to the court below so that the estate may be distributed according to this opinion, and under the testimony and the law Roxey Robinson is entitled to her share, although she has not heretofore claimed it.

The assignments of error are all sustained, except the fourth, to wit : " The distribution should be per capita among the legatees." This assignment has not been argued in this case and is, therefore, not properly raised for decision. The learned counsel for the appellant says in the opening of his argument: " The only question involved in this case is whether or not parol testimony is admissible to show whom the testator meant by the words contained in his will ' William Wilson's children.' "

The question whether the distribution should be per capita or per stirpes is raised and has been argued and will be decided in the appeal of Hannah M. Staub at No. 120, April T., 1904, post, p. 453.

The assignments of error are all sustained, except the fourth, and the decree of the court below is reversed and it is ordered that the children of William Wilson, named in the auditors' third finding of fact, be excluded from sharing in the distribution under the last will and testament of Godfrey Miller, deceased, and that the children of Seth Wilson by his deceased wife, Mary Miller Wilson, now known as Mrs. Alla Morgan, Mrs. Ella Viola Ingram and Rose Wilson, and his daughter Roxey Robinson, by his second wife, be permitted to share in said distribution. And it is further ordered that the costs of this appeal be paid by the appellee.