## Hunter *v.* Hunter, Appellant.

*Will—Ambiguity—Description of land—Declaration of testator—Extrinsic evidence.*

1. In an action in ejectment where the issue turns on the location of an "old coal bank in the flat," mentioned in a will, and the testimony is conflicting as to the location of the "old coal bank," the one side contending that it was on a slope, and the other that it was in a flat, declarations of the testator are inadmissible to show that the line which he intended ran to a coal bank on the slope.

2. Oral declarations of the testator as to the disposition which he had made of his property cannot be offered in evidence to vary the disposition of that property which he had made by his written will.

3. Where a subject exists which satisfies the terms of the will, and to which they are perfectly applicable, there is no latent ambiguity. Evidence is only admitted dehors the will from necessity, to explain that which would otherwise have had no operation.

Argued Oct. 4, 1910. Appeal, No. 85, Oct. T., 1910, by defendant, from judgment of C. P. Westmoreland Co.,

Nov. T., 1904, No. 270, on verdict for plaintiff in case of Mary A. Hunter v. William A. Hunter. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Ejectment for land in Mt. Pleasant township. Before DOTY, P. J.

At the trial it appeared that John Galloway died on October 27, 1883, seized of the land in question, and leaving a will by which he devised it to his two nephews James Hunter and William Hunter. James Hunter died in 1902, leaving a will by which he devised his share of the land to his widow, Mary A. Hunter, the plaintiff. The controversy arose out of the construction of the will of John Galloway.

The facts are stated in the opinion of the Supreme Court, and in the report of Hunter v. Hunter, 37 Pa. Superior Ct. 311.

When R. E. Fulton was on the stand defendant made the following offer:

Defendant offers to prove by the witness on the stand that John Galloway told the witness that he was running a line across his farm by the old coal bank and that he pointed out to the witness exactly the location of what he called the old coal bank, and on his attention being called to the fact that there were other openings on the farm that might be designated as an old coal bank, John Galloway emphatically declared that those were coal holes; that he called them coal holes and that anybody would know that those holes were not a coal bank. This for the purpose of showing how John Galloway himself regarded these two locations and how he designated them.

This is objected to as incompetent, irrelevant and immaterial, and an attempt to make a devise different from the will itself, and is an attempt to introduce a matter that has been heretofore ruled by the Superior Court as being incompetent.

The Court: We think this evidence tends to show a dis-

position or declaration of testator as to the disposition made of the estate and it is inadmissible, and we therefore refuse the offer and grant an exception.

Defendant offers to prove by the witness on the stand that on one occasion when John Galloway had pointed out the old coal bank near the chestnut tree, he, the witness, called John Galloway's attention to the fact that there were other openings down near the run, and that thereupon John Galloway told the witness that those openings along the run he called coal holes and that he thought anybody ought to know the difference between a coal bank and coal holes. This for the purpose of showing how John Galloway regarded these two locations on his farm and designated the same.

This is objected to as incompetent, irrelevant and immaterial to the matter in issue, as the witness has already testified that John Galloway called the place in the flat coal holes, and that anything additional that was said in regard to the matter is immaterial and of no use or assistance to the court. His reasons for calling them this name is immaterial, and it is an attempt to elicit testimony the effect of which will be to explain the will and give effect to a different will from that which the testator actually made.

The Court: The matter contained in the offer has been substantially testified to by the witness. We therefore sustain the objection and grant an exception to defendant. [2]

"Q. What did John Galloway say to you when he called these coal holes? A. He said to me that——"

This question is objected to for the reason that the witness has already testified that these places in the flat were called coal holes by him in their conversation on the subject; is incompetent, inadmissible and immaterial.

The Court: It seems to be an effort to get around the ruling of the court.

Mr. Beacom: Does the court rule that the doctor cannot give the language of John Galloway?

The Court: It seems to be the same matter already passed upon in the two previous offers and we therefore exclude it. Objection sustained; exception to defendant. [3]

Defendant offers to prove by this witness that John Galloway pointed out to him the place where he made the line of division between James Hunter and William A. Hunter on his farm, for the purpose of locating the old coal bank mentioned in the will, and explaining the will.

This is objected to as incompetent, immaterial and irrelevant to the issue before the court.

The Court: Objection sustained; exception to defendant. [4]

Defendant proposed to prove by the witness W. R. Hitchman that at the time the witness and John Galloway stood on the road at the point designated by the witness John Galloway pointed out this old coal bank and told the witness that that was the old coal bank through which he had run the line of division between the part of the farm which he had given to his nephew, James G. Hunter, and the part he had given to his nephew, William A. Hunter. For the purpose of showing what John Galloway intended and meant by the phrase "the old coal bank" used in his will.

This is objected to as incompetent and irrelevant and tends to establish a different will than that which is the written will of John Galloway, deceased. It is therefore not admissible and does not aid in interpreting the will in question.

The Court: Objection sustained; offer overruled; exception for defendant. [5]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* among others were (1–5) rulings on evidence, quoting the bill of exceptions; (6–11) various instructions.

*James S. Beacom*, with him *David L. Newill* and *Cecil E. Heller*, for appellant.—Parol testimony being necessary to fit the description to the will and this testimony having made the division line doubtful and uncertain, the principles laid down in Vernor v. Henry, 3 Watts, 385; Brownfield v. Brownfield, 12 Pa. 136; s. c., 20 Pa. 55; Miller's Est., 26 Pa. Superior Ct. 453, and other cases are clearly applicable and all testimony tending to show what the testator meant by his language should have been admitted.

*John E. Kunkle*, with him *Edward E. Robbins*, for appellee.—The defendant's offers were properly overruled: Root's Est., 187 Pa. 118; Hughes v. Westmoreland Coal Co., 104 Pa. 207; Myers v. Myers, 16 Pa. Superior Ct. 511; Thompson v. Kaufman, 9 Pa. Superior Ct. 305; Willard's Est., 68 Pa. 327.

OPINION BY MR. JUSTICE BROWN, January 3, 1911:

The common source of title to the land which is the subject of this ejectment was in John Galloway, who died in 1883, seized of a farm in Mount Pleasant township, Westmoreland county, containing about 306 acres. It was divided by a public road running through it from north to south, and the present controversy grows out of the following testamentary disposition of it made by Galloway in his will, executed May 23, 1879: "I will and bequeath unto my nephew, James Hunter, all that portion of my farm, lying West of the road running through my farm from South to North except that portion which lies along the Brush Run all south of the old coal bank in the flat. I will and bequeath to my nephew, William Hunter, all that portion of my farm, lying East of the road before mentioned, together with that portion lying South of the old coal bank before mentioned." James Hunter is dead, and by his will, admitted to probate in June, 1902, his interest in the farm devised to him by his uncle passed to his widow, Mary A. Hunter, the plain-

tiff in this action. Her contention is that, at the time John Galloway executed his will and when he died, the old coal bank was on the flat or level land along Brush Run, and that she, as the devisee of her husband, is entitled to all that portion of the farm which lies north of that coal bank and west of the public road. The defendant, on the other hand, contends that at the time the will was executed there was no coal bank in the flat land near Brush Run, that the only coal bank on the farm was on the slope of a hill about a thousand feet north of Brush Run, and that he is entitled, as the devisee of his uncle, to all the land south of the coal bank on the slope of the hill and west of the public road. The case was submitted to the jury under instructions that if they found from the evidence that there was an old coal bank in the flat along Brush Run, the plaintiff's contention should prevail, and from the judgment on the verdict returned in her favor we have this appeal.

The language of the testator in devising his farm to his two nephews is entirely free from ambiguity, and his intention as to how it was to be divided between them cannot be misunderstood. James was to take all west of the public road except that portion lying along Brush Run, south of an old coal bank in the flat. He was to take all north of that coal bank and west of the road. William, in addition to getting all east of the road, was to have all west of it, south of the old coal bank. The portion west of the road excepted from the devise to James and given to William was said by the testator to lie along Brush Run and to be south of the old coal bank in the flat or level land. If there was a coal bank some distance further north on the side of a hill, the intervening space consisting of more than seven acres, it does not answer to "the old coal bank in the flat" which the testator had in mind when he executed his will. The case of the plaintiff depended upon her ability to show that, at the time the will of her husband's uncle was executed, there was an old coal bank in the flat which the testator designated as

the point from which James was to take all the land to the north, and William all to the south. The whole situation was summed up in the following closing words of the general charge of the learned trial judge to the jury: "If you find there was an old coal bank in the flat, your verdict undoubtedly ought to be in favor of the plaintiff. If there was no old coal bank in the flat, then the plaintiff's contention falls and your verdict ought to be in favor of defendant."

Parol testimony was admissible in this case only for the purpose of showing the existence in the flat of the monument of title fixed by the testator himself. It was not competent to show his alleged declarations fixing a different point as the dividing line, for such testimony would have raised a doubt as to his intention, which does not appear upon the face of the will. His intention as there expressed could not be clearer. It matters not that there might have been other coal banks on other portions of the farm—one, perhaps, on the hill above the flat—for the testator had himself declared that the bank in the "flat" should be the dividing line between the lands, and if the plaintiff showed that a coal bank was there, her case was made out. There was no other question of fact for the jury's determination.

If the excluded offers which are the subjects of the first, second, third, fourth and fifth assignments of error had been allowed, the defendant might have established a will different from Galloway's written one. This, of course, could not have been permitted. In a prior ejectment between these same parties, involving the same land, in which, however, the present defendant was the plaintiff, the trial judge permitted him to prove declarations of the testator as to how he had divided the farm between his nephews, and, in holding that this was error, the Superior Court, in reversing the judgment for the plaintiff, properly said what we now adopt in dismissing the first five assignments: "When the subject-matter of the devise contained in the will of John Galloway came

to be ascertained there was, under the existing conditions of the testator's property, but one question to be determined: the location of the old coal bank in the flat. If there was a coal bank in the flat, the words which the testator had set down in his will there fixed the location of the line between the lands of James Hunter and William Hunter. If, on the other hand, there was no coal bank in the flat, then the description could only apply to the coal bank in the side of the hill. It was not competent to show by declarations of the testator made at the execution of his will, or subsequently, that he intended the devise to include something that was excluded by the terms of the will as executed. 'The modern doctrine is, that where a subject exists which satisfies the terms of the will, and to which they are perfectly applicable, there is no latent ambiguity. Evidence is only admitted dehors the will, from necessity, to explain that which would otherwise have had no operation.' This language was used by Justice ROGERS in Wusthoff v. Dracourt, 3 Watts, 240, decided in 1834; and has been recognized as authority to the present time. The testimony, admitted against the objection of the defendant, described a different line from that in the will. It was only because it did, that it was offered. The very difference, however, shows the error of the admission. The testator's line, represented by the will, gives to William Hunter all the land south of the old coal bank in the flat. The line proposed to be established by the parol evidence, as the line intended by the testator, ran from a tree up to the coal bank on the hillside. Thus to give effect to the testimony was to change the will of the testator, and make his oral declarations his will, instead of what he had executed and published according to the forms of law, as his will. That this testimony ought not to have been admitted is clearly established by authority: Best v. Hammond, 55 Pa. 409; Apple v. Byers, 98 Pa. 479; Willard's App., 68 Pa. 327; Hancock's App., 112 Pa. 532; Woelpper's App., 126 Pa. 562; Myers v. Myers, 16 Pa. Superior Ct. 511. The

sixth and seventh specifications of error are sustained:" Hunter v. Hunter, 37 Pa. Superior Ct. 311. The remaining six assignments complain of errors in a portion of the charge and in answers to points. We can discover no error in them, and the judgment is, therefore, affirmed.