Koplin *v.* Franklin Fire Insurance Company, Appellant.

183

Argued November 19, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Horace Michener Schell,* for appellant.

*Albert H. Friedman,* with him *Peter P. Zion,* for appellee.

OPINION BY DITHRICH, J., January 17, 1947:

This is the second time this case has been before this court. When it was here before on appeal from the dismissal of a motion to take off a judgment of compulsory non-suit, we reversed the judgment and awarded a procedendo: *Koplin v. Franklin Fire Ins. Co.,* 158 Pa. Superior Ct. 301, 44 A. 2d 877.

As previously stated by this court and the learned court below, the case turns on the simple question of the identity of two chicken houses insured by plaintiff with defendant. In the policy of insurance one was des-

ignated by defendant as chicken house No. 1 and the other as chicken house No. 2. According to its contention, it was the one designated as chicken house No. 2 and insured for $300 that was destroyed by fire. It was contended by plaintiff that it was chicken house No. 1 insured for $1,200 that was destroyed. The policy did not contain a description of either one; it merely designated them as No. 1 and No. 2. No. 2 was the larger of the two but, according to plaintiff, No. 1, while considerably smaller than the other, was used as a brooder house and was the more valuable of the two because of its construction and the equipment contained therein.

On the former trial, plaintiff was denied the privilege of proving which was the more valuable and the one which she desired to have covered by the larger amount of insurance. In reversing the lower court, we said: "In our opinion, evidence relating to the value, size, construction, and location of the chicken houses and how plaintiff referred to them was competent and admissible": *Koplin v. Franklin Fire Ins. Co.*, supra, page 305. On the re-trial of the case, plaintiff offered competent evidence in accordance with our opinion, and the learned judge of the court below, in a charge that was clear, fair, comprehensive, and, as modified, free of error, submitted the case to the jury and the jury found for plaintiff in the sum of $1,057.50.

In bringing this appeal, defendant either fails to grasp or refuses to recognize the distinction between the intention of parties and the object to which the intention applies, which may give rise, as in this case, to a latent ambiguity. But the distinction between the two is clear: *Lycoming Mut. Ins. Co. v. Sailer*, 67 Pa. 108; *Safe Deposit & Trust Co. of Pittsburg v. Bovaird & Seyfany Mfg. Co.*, 229 Pa. 295, 78 A. 268; *Koplin v. Franklin Fire Ins. Co.*, supra.

Defendant presumably intended to cover the larger of the two buildings with the larger amount of insur-

ance, but it alone was responsible for designating the buildings as No. 1 and No. 2. Neither plaintiff nor anyone on her behalf had ever so designated them. Upon receiving the policy of insurance, which did not give the dimensions of the buildings but referred to the one destroyed, according to plaintiff, as containing heating, lighting, and ventilating equipment, and the other merely as ". . . chicken house situate as above described and known as #2 . . .," it would be most natural for plaintiff to assume that the former was the one described as the No. 1 chicken house. The policy states they were known as No. 1 and No. 2; but the question naturally arises to whom were they so known? Certainly, not to plaintiff.

"The standard of interpretation of an integration, except where it produces an ambiguous result, or is excluded by a rule of law establishing a definite meaning, is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, other than oral statements by the parties of what they intended it to mean.

"Comment:

. . .

"b. Where a contract has been integrated the parties have assented to the written words as the definite expression of their agreement. In ordinary oral negotiations and in many contracts made by correspondence the minds of the parties are not primarily addressed to the *symbols* which they are using, *but merely to the things for which the symbols stand.* Where, however, they integrate their agreement they have attempted more than to assent by means of symbols to certain things. They have assented to the writing as the expression of the things to which they agree, therefore the terms of the writing are conclusive, and a contract may have a

meaning different from that which either party supposed it to have": Restatement, Contracts, §230 (Italics supplied). A contract may thus be created though each party attached a different meaning to the language used: Williston on Contracts, Revised Ed., Vol. III, §606. That, apparently, is what happened in this case.

The judgment is affirmed.