Logan, Appellant, *v.* Wiley.

Argued October 3, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*William C. Porter,* with him *Thomas L. Anderson* and *F. Stanley Crooks,* for appellant.

*Ralph W. Peacock,* with him *Rufus S. Marriner* and *Marriner, Wiley & Marriner,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 10, 1947:

This action in ejectment requires construction of the following clause in the will of Mary Louise Horn:

"7. I give, devise and bequeath to Paul M. Wiley, of Washington, Pennsylvania, the property known as the 'Daune Building' on South Main Street, Washington, Pennsylvania, . . . ."

Do these words constitute a clear description of the realty devised, or is the description ambiguous?

A *latent* ambiguity, contra-distinguished from a *patent* ambiguity, *can only be developed by extrinsic and collateral circumstances: Metzger's Estate,* 222 Pa. 276, 71 A. 96; *Gerety Estate,* 354 Pa. 14, 18, 46 A. 2d 250. In *Isaac Brownfield v. John Brownfield,* 12 Pa. 136, Chief Justice GIBSON said, p. 145: "Nothing could be more indefinite than a bequest simply to John Smith; yet it would be unambiguous, standing on the words of the will, though it might be otherwise standing on extrinsic circumstances; and a contest about the identity of the legatee would be determinable as an unmixed question of fact, . . . ." In *Byrne's Estate,* 121 Pa. Superior Ct. 550, 184 A. 303, it was said in a per curiam opinion, p. 552: "In Metzger's Est., 222 Pa. 276, 71 A. 96, Mr. Justice STEWART speaking for the court said (p. 281) : '. . . "When such latent ambiguity has once been made dehors the will, then the way is open for parol testimony to whatever extent may be necessary to remove it": Brownfield v. Brownfield, 12 Pa. 136; Brendlinger v. Brendlinger, 26 Pa. 131.' To the same effect, see Wagner's App., 43 Pa. 102; Amberson's Est., 204 Pa. 397,

401, 54 A. 484; Shand's Est., 275 Pa. 77, 81, 118 A. 623; Wampole's Est., 3 Pa. Superior Ct. 414; Miller's Est. (No. 1), 26 Pa. Superior Ct. 443, 449; Morris's Est., 76 Pa. Superior Ct. 50, 53. The leading text book authorities are, likewise, in agreement on the subject. See 1 Greenleaf on Evidence, sec. 297; Wigmore on Evidence, secs. 2470-2472 (2d Ed. and 1934 Supplement). . . ."

The extrinsic and collateral circumstances surrounding the making of this devise are as follows:

In 1919, E. C. Horn, husband of testatrix, acquired real estate on South Main Street in Washington, Pennsylvania, by deed. It was described by metes and bounds, as fronting 60 feet on the western side of South Main Street and extending westward of that width 240 feet. It was bounded by property of a railroad company on the south, several other named properties on the north and in the rear by a named property. On the front along South Main Street there was erected a three story brick hotel building, with additions, extending west 130.2 feet from the property line on the street. The premises were not enclosed by a fence or other structure.

After acquiring the property, E. C. Horn built a board fence about six feet in height from the western end of the hotel building, along the property of the railroad company, to a point 130.2 feet west of the street line, and thence across the lot northwardly to the corner of a one-story brick addition to the hotel building. There was a gate in the fence opening to the property of the railroad company on the south. The property of the railroad, the south boundary of the land, was a 25 foot wide brick paved driveway.

In 1936, E. C. Horn leased the extreme western end of the real estate to the Bell Telephone Company which erected a one-story garage thereon of the width of 60 feet and depth of 90 feet. By oral permission the telephone company used the vacant ground between the east-

ern end of the garage and the board fence and brick hotel extension. The vacant land, so permissively used, was occupied as a storage space and was enclosed by a wire cyclone fence. Egress and ingress to the garage and storage space were entirely over the brick paved driveway of the railroad company.

E. C. Horn died in 1939 and by his will gave and devised his entire estate to his wife, Mary Louise Horn, and appointed her the executrix.

Mrs. Horn died, testate, in 1941. By the seventh clause of her will, above quoted, she devised "the property known as the 'Daune Building' " to Paul M. Wiley. After numerous bequests and devises (none of which relate to the premises in question) by the 16th clause of the will, she devised and bequeathed the *residue* of her estate to Mary S. Logan, the plaintiff herein.

After the death of testatrix in 1941, Paul M. Wiley took possession of all the premises. In 1945, Mary S. Logan, the plaintiff, as residuary devisee, instituted an action in ejectment for the westerly 109.8 feet of the premises (constituting the garage and storage space) claiming that it was not included in the devise in the 7th clause of the will. Paul M. Wiley, the defendant, filed his answer claiming ownership of the premises under the clause in the will now in question. Mr. Wiley died, testate, in 1946. Under the terms of his will the premises were devised to his wife, Eva Katherine Fletcher Wiley, the residuary devisee, and who was appointed executrix. She was substituted as defendant.

An issue of fact being then framed came on for trial before a jury. The jury rendered a verdict for the defendant. The learned court below dismissed plaintiff's motion for a new trial and for judgment for plaintiff *non obstante veredicto*. This appeal followed.

The words: ". . . the property known as the 'Daune Building' " are not a clear and precise description of the real estate intended to be devised. No metes and

bounds are given. Of necessity, resort must be had to extrinsic and collateral circumstances to *identify* and *define the boundaries* of the premises intended to be devised.

An ambiguity in description may always be explained: *Brownfield v. Brownfield,* 12 Pa. 136; *Coleman and wife v. Eberly,* 76 Pa. 197; *Brooklyn Trust Co., Trustee, v. Warrington,* 277 Pa. 204, 120 A. 825; *Balok Estate,* 151 Pa. Superior Ct. 592, 30 A. 2d 664. The Fiduciaries Act of June 7, 1917, P. L. 447, section 34[a], 20 PS, 751 et seq., provides a procedure for the designation of the curtilage of a building devised.

The evidence raises a question of fact whether by the erection of the fence and garage testatrix's husband intended thereafter to regard the real estate as constituting two separate premises, or but one, and whether testatrix, her husband's devisee, intended *by the use of the words in the devise* to include *both* properties or only *one.* The issue was properly submitted to the jury: *Collins v. Rush,* 7 S. & R. 147; *Scott against Sheakly,* 3 Watts 50; *Brownfield v. Brownfield,* 12 Pa. 136; *Hoffman et al. v. Danner et al.,* 14 Pa. 25; *The Lycoming Mutual Insurance Co. v. Sailer,* 67 Pa. 108; *Safe Deposit & Trust Company of Pittsburgh v. Bovaird & Seyfang Manufacturing Company,* 229 Pa. 295, 78 A. 268; *Little v. Greek,* 233 Pa. 534, 82 A. 955; *Trustees of the Proprietors of Kingston v. Lehigh Valley Coal Company (No. 1),* 241 Pa. 469, 88 A. 763; *Laidley v. Rowe,* 275 Pa. 389, 119 A. 474.

We have examined the record to determine whether there was sufficient admissible evidence to support the verdict. There is no dispute concerning the admissibility of evidence relating to the physical situation and condition of the premises and all surrounding facts and circumstances in relation thereto. Plaintiff, however, excepts to the admission of testimony consisting of declarations by testatrix concerning her *identification* of

the devised premises and her expression of *intention* respecting the devise.

In interpreting a will or deed, and considering admissibility of evidence in aid of construction, a fundamental distinction exists between oral declarations by testator or grantor which *contradict or vary* the written devise, bequest or grant, and those which, when the written words are *equivocal or ambiguous,* merely *identify* the gift or grant and reveal the *intent* with respect thereto. In the former case the oral testimony would compete with and overthrow the written words. In a *will* this would permit parol testimony to constitute a will, which is prohibited by the Wills Act. Such oral testimony as respects a *deed* would violate the parol evidence rule. Where, however, the words are unimpeached, but are equivocal or ambiguous, declarations of intent by testator or grantor are admissible for the purpose of the *interpretation* of the equivocal or ambiguous language: see Wigmore on Evidence, Vol. IX (third edition), sections 2471-2472.

Thus: declarations are *inadmissible* which contradict or vary the written words: *Otis C. Fuller v. Sarah Ann Weaver,* 175 Pa. 182, 34 A. 634; deed described land as running to a *stone;* declarations held inadmissible that grantor intended line to end at an *iron pipe: Hunter v. Hunter,* 229 Pa. 349, 78 A. 849; devise "old coal bank in the flat;" declaration inadmissible to show intention of devise of "coal bank on the slope:" *Myers v. Myers,* 16 Pa. Superior Ct. 511; devise was of a numbered house; declaration of intention of testator to include more than the numbered house and its curtilage held inadmissible. But declarations of intent are *admissible* where the writing is equivocal or ambiguous: In *Brownfield v. Brownfield,* 12 Pa. 136, the land devised was to a post. There were two posts. Declaration of testator that he intended a named post held admissible. Chief Justice GIBSON said, p. 146: ". . . If (the testimony)

was offered as proof that the testator had said so, it ought to have been admitted." In *Safe Deposit & Trust Company of Pittsburgh v. Bovaird & Seyfang Manufacturing Company,* 229 Pa. 295, 78 A. 268, the deed conveyed one lot of several on a named street and also all title to ground on the street then vacated. The question was whether the grantor only intended to convey vacated land *abutting* the lot or *all* of the vacated land. Grantor's declarations of intent were held admissible. In *Gerety Estate,* 354 Pa. 14, 46 A. 2d 250,—Where there was an ambiguity concerning the identity of a beneficiary; declarations by testatrix as to her intention were held admissible. In *Koplin v. Franklin Fire Insurance Company,* 160 Pa. Superior Ct. 182, 50 A. 2d 746, there was an ambiguity in the terms of a fire insurance policy insuring two chicken houses. A fire destroyed one of them. Oral testimony was permitted by the insured as to which chicken house was covered by the policy. Illustrations relating to both situations could be multiplied.

The testimony admitted in evidence over objection is that of the scrivener, a public stenographer in Bay City, Michigan. She testified that testatrix stated to her during the course of the preparation of the will that she wanted Paul Wiley (defendant's devisor) to have the Duane Building property; that there was a garage on the back of it that was occupied by the Bell Telephone Company; that testatrix wanted the witness to put the Duane Building in quotation so that it would be understood that it was all one property; that the Duane Building was always called the Duane Building Property, and that it was so known around the town.

There are many questions of fact, and inferences from conceded facts, which arise in seeking to resolve the ambiguous devise in this will. Among them: The name *Duane* is spelled *Daune* and is enclosed in quotation marks; every *other* piece of real estate is specifically devised; the words *"known as"* are in themselves sig-

nificant and require evidence in aid of interpretation; the fact that there was no outlet for the western end of the lot except for the apparent permissive use of the railroad's paved lane or right of way; the circumstances surrounding the building of the fence and the erection of the garage as well as the assessment for inheritance taxes. This testimony was clearly admissible as *identifying* the devised property and as an aid to the *interpretation* of the clause in the will.

President Judge GIBSON tried this case with meticulous care and fairness. We discover no error in the trial, or in his accurate and comprehensive charge to the jury. His opinion, for the court in banc, dismissing plaintiff's motions for judgment *non obstante veredicto* and for a new trial was a correct statement of the applicable law and disposition of the case.

The judgment is affirmed.