## Bradish et ux. v. Hahn et ux.

*Carrol Caruthers*, for plaintiffs.

*Vincent R. Smith* and *Robert Engel*, for defendants.

LAIRD, J., March 8, 1947.—Plaintiffs filed their bill of complaint on July 10, 1946, praying for a decree of specific performance of an agreement for sale of a certain farm in this county and for a decree enjoining defendants from encumbering or conveying the property in question.

Defendants filed their answer to that bill of complaint alleging that by the terms of the agreement they, defendants, had the right to rescind the agreement and that they did so before the date fixed by the agreement for final settlement.

There is only one issue raised by the pleadings and that is whether or not, under the agreement for sale, defendants, as vendors, had the right to terminate the obligations of both parties to the agreement by refusing to make the conveyance and returning the hand money.

### Findings of fact

1. Plaintiffs and defendants all reside in the Township of South Huntingdon, County of Westmoreland and State of Pennsylvania.

2. On May 7. 1946, Frank L. Hahn, one of defendants, was seized, in fee simple, of a farm composed of five tracts of land, containing in the aggregate 128

acres and 56 perches, situate in said Township of South Huntingdon.

3. On or about May 7, 1946, Frank L. Hahn, together with his wife, Ellen Hahn, other defendant herein, entered into a written agreement with plaintiffs for a sale to plaintiffs of the premises above mentioned.

4. By said agreement, defendants, for the consideration of $8,000, agreed to sell and convey to plaintiffs, on or before July 1, 1946, in fee simple, by good and sufficient deed of general warranty, the premises, clear and free of all encumbrances.

5. One of the original copies of this agreement was properly proven and admitted into evidence as plaintiff's Exhibit No. 1.

6. Article 9 of said agreement contained the following provision: "It is agreed that if said parties of the first part fail to make and deliver a good and sufficient general Warranty Deed for said tract of land to the said parties of the second part on or before the first day of July 1946, the said down payment of Five Hundred ($500.00) Dollars shall be returned by the said parties of the first part to the said parties of the second part, and it is also agreed that if the transfer of said real estate is not made by reason of the default of the said parties of the second part, the said hand money of Five Hundred ($500.00) Dollars shall be retained by the said parties of the first part as liquidated damages."

7. The down payment of $500 was made and on June 27, 1946, four days previous to the final day fixed for settlement, plaintiffs tendered to defendants the sum of $8,000, the full consideration named in the agreement, and demanded a deed for the premises.

8. On or about May 28, 1946, defendants returned the $500 hand money, by letter, stating "We are not going to sell as we can't find anywhere to go".

9. Defendants did not accept the $8,000 tendered to them and have refused to make and deliver a deed for the premises.

10. Defendants have harvested and retained the crops on the premises but there is no evidence of any value thereof produced in this case.

11. The agreement for sale in question was prepared by an attorney, John C. Silsley, who was employed by both parties. The provisions of article 9 of the agreement were inserted by the attorney on his own initiative and this provision was satisfactory to both parties.

12. There was no agreement made before the signing of thát agreement that vendors should have the right to rescind the agreement by returning the $500.

13. The agreement was read to plaintiffs and defendant, Frank Hahn, before execution by them in the office of the attorney. The agreement was signed by the other defendant at a later time.

## Discussion

The sole question raised by the pleadings and the testimony is whether or not defendants had a right at their option to rescind the agreement, on returning the hand money.

"A writing in which only words of definite and precise meaning, as commonly understood, are used, free from ambiguity, is always its own best interpreter, since the language used best discloses and reveals the intention, object, and purpose of the parties to it": Atherton v. Clearview Coal Co., 267 Pa. 425, 432. See also Koplin v. Franklin Fire Insurance Co., 160 Pa. Superior Ct. 182.

"Where the language used is plain and unambiguous, the rights of the parties must be determined by the provisions of the instruments wherein they committed their agreement to writing": Musselman et ux. v. Sharswood B. & L. et al., 323 Pa. 550, 556.

However, in cases where the wording of a written agreement is ambiguous or indifferently expressed, oral evidence of prior negotiations and contemporaneous understanding between the parties is admissible, not to vary the written instrument, but solely for the purpose of making clear which meaning was attached to the words used: Laney et ux. v. Columbia Natural Gas Co., 305 Pa. 527; Philadelphia v. National Surety Co., 315 Pa. 356.

Even the acts of the parties, subsequent to the written agreement, may be shown in evidence, where the terms of the agreement are ambiguous and the parties have put their own mutual construction upon it: Rochester & Pittsburgh Coal and Iron Co. v. Nakoma Coal Co., 271 Pa. 394.

In the case at bar both parties introduced evidence, without objection, as to the understanding of the parties and the circumstances surrounding the making of the agreement and both offered evidence as to the actions of the parties subsequent to the making of the agreement. Such subsequent actions are of little help to the chancellor in interpreting the agreement because they tend to show no mutual construction but rather entirely different interpretations.

In reviewing the testimony concerning the understanding of the parties before and at the time of the signing the agreement, the chancellor finds that defendants' claim that such understanding was that they could rescind the agreement at their pleasure and terminate their obligations by refusing to sell and refunding the down payment. On the other hand plaintiffs claim there was no such understanding. The only disinterested witness in the case was the attorney, who drafted the agreement and was employed by both parties. He states that he inserted the article 9 on his own initiative and not at the request or suggestion of either party. He also states this provision was satis-

factory to all parties. On this testimony the chancellor is compelled to find that there was no oral mutual understanding between the parties at the time of the agreement that defendants could rescind the agreement. This decision leaves the interpretation of the agreement resting upon the meaning of the terms actually used in the document itself.

Neither counsel cites any Pennsylvania authority directly in point interpreting the particular language used in article 9 of the agreement, nor has such authority come to the attention of the chancellor. However, a very similar case came before the court in Avon-by-the-Sea Land Improvement Co. v. Thompson, 60 N. J. Eq. 207, 46 A. 946, wherein the agreement for sale of real estate contained the following provision:

"And for the due performance of all and singular the covenants aforesaid, the said parties hereto do bind itself and himself, and their respective heirs, successors and administrators, and, they hereby agree to pay, upon failure to perform the same, the sum of five thousand dollars by the party failing to carry out this agreement to the other, which they hereby mutually fix and settle as liquidated damages therefor. And the said party of the second part agrees to forfeit the sum of five thousand dollars to said party of the first part as said damages, in case he fails to carry out his part of this agreement."

In that case the court held that the provision above mentioned does not constitute such agreement an alternate contract, so as to release the vendor from performance upon payment of the damages stipulated in the agreement, without a bona fide effort to perform.

In the case of Wilson v. Fairchild, 45 Minn. 203, 47 N. W. 642, defendant had agreed to sell and the writing further provided "if I refuse to sell" vendor shall pay $60 to vendee. The court held that vendor had no option to sell or not and that the provision was in the

nature of a penalty but did not give him the right to refuse to sell.

We are of opinion that the principle of these cases should be applied in the present case and that defendants herein having definitely agreed to sell and convey, they do not, by virtue of article 9, have the right to refuse to sell, without a bona fide effort to comply with their obligation to sell. Article 9, as far as defendants are concerned, cannot come into operation, except to excuse defendants from further obligations other than return of the hand money until they are unable after a bona fide effort to perform their obligation to sell and convey.

The subject of the agreement being farming land, there is no adequate remedy at law and plaintiffs are entitled to specific performance.

### Conclusions of law

1. Plaintiffs have complied with all of the requirements by them to be kept and performed in accordance with the terms of the agreement, plaintiffs' Exhibit 1.

2. Defendants have failed to deliver a deed to plaintiffs in accordance with the terms of the agreement.

3. There was no fraud, accident, mistake, or prior oral understanding, which requires the reformation of the contract.

4. Plaintiffs are without an adequate remedy at law.

5. Defendants should be enjoined from mortgaging or encumbering said property in any way and from selling or conveying the same or any part thereof to any person other than plaintiffs.

6. Plaintiffs are entitled to a decree of specific performance of said agreement.

### Decree nisi

And now, to wit, March 8, 1947, upon due consideration, it is ordered, adjudged and decreed:

1. That defendants in this suit shall execute and deliver to plaintiffs their deed of general warranty,

free of liens and encumbrances, conveying to plaintiffs herein, all those five tracts of land containing in the aggregate 128 acres and 56 perches, situate in the Township of South Huntingdon, County of Westmoreland and State of Pennsylvania, being bounded and described as follows, to wit: . . .

2. That plaintiffs shall pay to defendants, on delivery of the deed, the consideration of $8,000.

3. That defendants shall not encumber, sell or convey said real estate other than as set forth in this decree.

4. That defendants shall pay the costs.

5. That this decree shall be entered as a decree nisi, which shall be entered by the prothonotary as of course as a final decree, unless exceptions are filed by defendants, or either of them, within 10 days after notice from the prothonotary of the filing of the findings, conclusions and decree of the chancellor.